VON STILLI et al. v. YOUNG et al.

No. 33062.   May 16, 1950.

*219 P. 2d 224.*

Mark Ingle and F. A. Rittenhouse, both of Oklahoma City, for plaintiffs in error.

W. F. Smith and Paul Brown, both of Oklahoma City, for defendants in error.

LUTTRELL, J. This action was brought by plaintiffs Alfred E. von Stilli and Irene A. von Stilli, on behalf of themselves and other owners of lots in Lake Hiwassee subdivision, against the defendants J. M. Young and Kate Young, to establish the rights of plaintiffs in certain lands in the Lake Hiwassee project, and to enjoin the defendants from the further sale of lots in said project. The cause was tried to the court without a jury, as one of equitable cognizance, and the trial court denied plaintiffs the relief sought. Plaintiffs appeal.

The essential facts are not in dispute. The Lake Hiwassee project was and is a privately owned lake and recreational center near Arcadia, in Oklahoma county. It was planned and developed by a corporation, the Lake Hiwassee Development Company, which was organized by certain promoters of similar projects in other states in the spring of 1937. This company secured title to some 450 acres of land near Arcadia, and contracted for the erection of a dam across Hughes Creek, which traversed the area secured by them. Immediately upon the making of a contract with an engineer for the erection of a dam across the creek and the platting of lots around the lake, they extensively advertised the lots for sale as cabin sites, and the area as a recreation center. On October 21, 1937, they filed a plat and dedication of what they termed Lake Hiwassee subdivision, being a part of the northeast quarter, and a part of the northwest quarter of section 33, township 14 north, range 1 west, Oklahoma county, which subdivision comprised what is termed in the briefs and record as the north half of the project, this being the portion nearest the site of the proposed dam. No plat and dedication of what is known as the south half of the project was filed at that time. Plaintiffs and others bought lots in the north half of the project, and from a list of lots purchased and cabins erected in the north half of the project it appears that prior to March 1, 1944, lots had been sold to only 150 persons and some 20 cabins had been erected.

The promoters of the project apparently ran into financial difficulties almost from the beginning. On October 1, 1937, they mortgaged the entire property to the defendant J. M. Young for $24,000, and later became further indebted to him in the sum of approximately $16,000. They permitted the charter of the Lake Hiwassee Development Company to expire because of their failure to pay the corporation license tax, and the charter was forfeited June 12, 1941. Shortly prior to the forfeiture of the charter, on April 18, 1941, they quit-claimed title to the entire area not previously disposed of to Young in satisfaction of their indebtedness to him.

Apparently the Development Company did not complete the dam, roads, and other improvements, which in their contracts for the sale of lots they

had represented would be completed for the use of the owners of lots, and early in 1943, the lot owners organized a corporation called Lake Hiwassee Improvement Company, and by stock subscriptions and voluntary contributions raised the sum of approximately $9,000, most of which was used to complete to the satisfaction of the lot owners the construction of the dam and the improvement of a road around the lake, and a parkway 50 feet in width along the shore of the lake.

Understanding that the defendant J. M. Young contemplated the filing of a plat and dedication of lots in the south half of the area surrounding the lake, and the sale of such lots subject to the same restrictions, and with the same rights, as those imposed upon and enjoyed by the owners of the lots in the north half of the project, plaintiffs brought this action. The petition contains three causes of action, the first alleging that by virtue of the statutory dedication of the north half of the project the plaintiffs were granted the peaceful possession of the land in the south half with the right to control, supervise and possess the same for sportmen's purposes; that the quit-claim deed conveying the property to Young did not abrogate or affect the rights of plaintiffs in the south half of the project, but that defendants were asserting ownership and rights in said south half contrary to the rights, ownership, possession and control of the plaintiffs, and asking that plaintiffs' title to the property, with the right to use, supervise and control the same for sportmen's purposes, be quieted as against the defendants, and that they be enjoined from asserting any right, title or interest adverse to the rights of plaintiffs.

The second cause of action alleged a common-law dedication, during the year 1937, of the south half of the project for sportmen's purposes in favor of plaintiffs, by virtue of representations by the Development Company and its agents that all of the south half of the project, including the entire lake, would be devoted to their exclusive possession, control and enjoyment for horseback riding, golf, tennis and other sports; that these representations were made to induce them to buy, and that in reliance upon them they did buy their lots in the north half of the project, and that for more than seven years they have enjoyed the exclusive use, control and possession of said property for sportmen's purposes, and expended large sums of money in the purchase price of the lots, and upkeep and maintenance of all of the real property, and for the enjoyment and amusements to which the property was dedicated. In this cause of action they also asked to have their title quieted as against any claims of the defendants.

The third cause of action alleges that the plaintiffs are informed and believe that defendant J. M. Young will prepare and execute a dedication and plat similar to the one covering the north half embracing the south half of the section, and will attempt to sell lots therein in violation of the rights of plaintiffs, and pray that he be enjoined from so doing.

Defendants in their answer deny the right of plaintiffs to the possession and use of the south half for sportmen's purposes, except the lake, parkway surrounding the lake, and the roadway around the lake, and aver that the defendants are the owners of the south half of the property subject to the rights which plaintiffs are entitled to enjoy as above set forth, deny that there was ever a common-law dedication of the land comprising the south half of the project, except the parkway and road aforesaid, and assert their right to plat and sell lots in the south half. The reply of plaintiffs is in effect a denial of the allegations of defendants' answer and a reiteration of the averments of their petition.

The decisive question presented is whether the judgment of the trial court was clearly against the weight of the evidence. Plaintiffs contend that the evidence shows a common-law dedica-

tion of the land in the south half for sporting and recreation purposes, at least to the extent that they were granted an easement by implication, or that their rights amounted to a license coupled with an interest in the property, which vested in them, as owners of lots in the north half, the right to the land in the south half for such purposes, and that the trial court erred in refusing to so hold. We are unable to agree with this contention.

The plat and dedication of the north half of the project appears in the record. Therein no rights were granted to the owners of lots in that part of the project to use the land in the south half of the project for any purpose, but the rights granted to owners of lots are "the use and privileges of the lake," including boating, bathing, fishing and the use of private beaches, also the right to use the parkway surrounding the lake, and the right to use a dock built by the grantor. In none of the contracts, deeds or other instruments executed between the parties is there any reference to or conveyance of any right of any nature in the lands in the south half of the project. In so far as a common-law dedication or easement by implication is concerned, the evidence is conflicting. The principal reliance of plaintiffs in this respect is placed upon advertisements appearing in the newspapers and a printed pamphlet or brochure issued by the Development Company and mailed to lot owners and prospective applicants. In none of those advertisements is there any express statement or promise by the Development Company from which an inference could be drawn that the land in the south half was to be used for sporting purposes, games, etc., by lot owners in the north half, except that in one picture of the entire project, evidently an artist's conception thereof, is shown a clubhouse and a portion of a golf course adjacent to the lake on the south. But these advertisements **state only that land is available for a golf course, and** it appears that at that time the Development Company had

an option on an additional 80 acres adjoining the property on the southeast. It also appears that the scheme originally contemplated the acquisition of the entire section, which would have given ample room for an 18 hole golf course, which admittedly could not be constructed upon the land obtained by the Development Company and appropriated to the project. In at least two of these advertisements it is stated that there were only 800 building sites surrounding the lake, whereas the lots platted on the north half numbered only 350. In other advertisements it was stated that many persons would buy two or three lots, so that building sites would in all probability not exceed in number more than four or five hundred. These advertisements also referred to horseback riding, stating that the lake was ideally located for riding through miles of beautiful countryside, and that arrangements could be made at neighboring farms for boarding and maintaining horses.

It further appears that in October of 1937 the Development Company issued a pamphlet or paper called the Lake Hiwassee News, which it distributed to lot owners and prospective purchasers, and that in the edition printed October 29, 1937, appears a statement that the plat on the north half of the development has been filed and recorded, and that the plat covering the south half is now being prepared and will be filed as soon as completed, about November 15th. Although several witnesses testified that the promoters of the project personally stated that the land in the south half would be used only for sports, others testified that no such representations were made to them. It is significant that a plat commonly in circulation at the time showed tiers of lots completely surrounding the lake, and available both in the north and south portions of the project. In fact, such a plat appeared upon the back of the contract executed by plaintiff Alfred E. von Stilli himself, and a similar plat appears upon the reverse side of letter paper used by him in connec-

tion with the operation of the Lake Hiwassee Improvement Company, of which he was president. A number of witnesses, some of them produced by plaintiffs, testified that they had seen this plat and understood that lots were to be platted in the south half as well as the north half of the project. The engineer who built the dam and platted the lots testified that his contract, which was introduced in evidence, called for the platting of lots in both the north and south portions of the project; that he did not deliver the plat for the south portion to the Development Company because they were unable to pay him for his services, and that upon their payment of a portion of his fee he delivered the plat for the north half. He further testified, and his testimony is supported by that of other witnesses, that the lots in the south half were surveyed and staked as a part of the same operation in which he surveyed and staked the lots in the north half.

The testimony shows that wooded portions of the south half were used to some extent by picnic parties, and that there was some horseback riding there, but the testimony also shows that horseback riders used unoccupied portions of the north half. It is conceded by plaintiffs that after the platting of lots in the south half there was some 38 or 40 acres of land in that portion not embraced in the platted area which would still be available for picnic parties and outings. Defendants concede that plaintiffs and all other lot owners are entitled to use the entire lake, the parkway and roads adjoining the parkway at any and all times subject to the restrictions upon such use contained in the dedication and in the contracts between the parties. It further appears that all the money which plaintiffs claim to have expended for the upkeep, development and maintenance of the property was expended on the parkway, dam and a road around the lake adjoining the parkway, all of which it is conceded they are entitled to use.

From the entire record it does not appear that the plaintiffs are seriously concerned with the failure of the Development Company to build a clubhouse, construct a golf course, or provide a picnic and recreation ground, but that they fear that the sale of lots in the south portion of the tract will so increase the number of persons entitled to use the lake for fishing, duck hunting and boating that the facilities afforded by the lake would be overcrowded, and their free enjoyment thereof limited or curtailed. Whether this will result from the sale of lots in the south area is, of course, speculative. The trial court, having heard the evidence, apparently concluded that the owners of lots in the north half did not possess such right, title or interest in the south half of the project as would deprive the defendants of the right to plat and sell lots in that area adjoining the parkway around the lake, as shown by the plat of the entire project hereinabove referred to. From a careful study of all the evidence, we conclude that the judgment of the trial court is not clearly against the weight thereof.

In the briefs and oral arguments of the parties it was suggested that this court should pass upon and determine in whom the right to control, operate and maintain the project is vested, and whether the plaintiffs or the defendants were entitled to levy and collect assessments for the maintenance and upkeep of the property. So far as the record shows there was no contention between the plaintiffs and defendants at the time this action was tried in regard to the right of control and operation, or the duty of levying assessments and making repairs upon the property. No such issue having been presented to or determined by the trial court, we decline to pass upon such an issue here.

Plaintiffs also contend that the trial court should have quieted title to the land in the south half of the project

either in plaintiffs or defendants, and that it did neither. Defendants have not appealed from the judgment of the trial court. As pointed out above, the judgment denied the contention of plaintiffs, thus holding that they did not have such title, interest, or rights, in the south half of the project, as would preclude the defendants from selling lots therein in accordance with the plat of the entire project. If it failed to quiet the title to any portion of the south half in the defendants, plaintiffs were in no wise prejudiced thereby.

Judgment affirmed.

DAVISON, C.J., and CORN, GIBSON, HALLEY, JOHNSON, and O'NEAL, JJ., concur. WELCH, J., dissents.

WELCH, J. (dissenting). I think the overall plan of the project including platting, dedication, improvement and development, contemplated definite vesting of rights in lot purchasers to uses and enjoyment in and upon the south half of the area of the project. In my view the transactions and conveyances constituted a granting to lot purchasers by contract and dedication of definite rights and easement in and over the south half which are not recognized and protected by the majority opinion.

While the opinion does not expressly or completely exclude these lot owners from the south half, it does not clearly point out such rights as are reserved to and protected in them and therein I think the opinion is further erroneous.