In the Matter of the Claim of RHODA BLACK, Respondent, against SAMUEL SWETNICK, Respondent, and BROOKLYN HEIGHTS TERRACE CORPORATION et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— This is an appeal by the insurance carrier from a decision and award by the Workmen's Compensation Board which awarded compensation to the claimant and directed that the workmen's compensation insurance policy issued to the Brooklyn Heights Terrace Corporation be reformed so as to name Dr. Samuel Swetnick as the insured. Dr. Swetnick was the sole owner of the capital stock of the Brooklyn Heights Terrace Corporation. The corporation purchased a building

in July, 1947, at No. 10 Montague Terrace, Brooklyn, which Dr. Swetnick intended to use as his office and as a sanitarium for the care of alcoholic patients. The building had thirty-one rooms and was adapted to Dr. Swetnick's use. The policy of insurance was originally issued on October 28, 1947; the estimated advance premium was $150.20 computed upon the basis of a prospective payroll of $9,000. The policy was issued in the name of the corporation, although the corporation did not have any employees at any time. Beginning in April, 1948, Dr. Swetnick employed several persons, including four or five nurses. The claimant was a nurse in Dr. Swetnick's employ. She suffered an injury on October 14, 1949, in the course of her employment, while lifting a patient. On October 29, 1948, a payroll audit was made by the insurance carrier. The payroll book which was examined by the auditor was Dr. Swetnick's payroll book. This audit disclosed the nature of the use to which Dr. Swetnick was putting the building; the auditor reported that there were several nurses, including the claimant, on the payroll. Notwithstanding this fact, the insurance carrier continued to classify the employees for the purpose of computing the compensation premium as building employees, clerical employees and "all other employees". A certificate of the renewal of the policy for the policy period from October 28, 1948, to October 28, 1949, was issued by the insurance carrier on September 30, 1948; an estimated advance premium of $157.30 was charged and was presumably paid. A bill was also sent out later on the basis of the audit of the preceding year for an additional premium of $1.34 for that year. With knowledge of the facts disclosed by the audit, the insurance carrier allowed the renewal of the policy to remain in effect and took no steps to change the classification of the employees or to recompute the premium. The insurance carrier had had knowledge of the facts long before the date of the claimant's accident, October 14, 1949. After it had received notice of the claimant's accident, the insurance carrier attempted to eliminate the classification of "all other employees" under which the claimant might have been included. On November 28, 1949, about six weeks after the accident, the carrier sent out a corrected bill for the first year, October 28, 1947, to October 28, 1948, eliminating the classification of employees termed "all other employees" and showing that, instead of an additional premium of $1.34, there was a refund owing the insured of $68.49. Subsequently, on February 6, 1950, the carrier sent out a similarly corrected bill for the second year, during which the accident had occurred, showing a return premium of $72.43. In these circumstances, we believe that there was substantial evidence to support the board's decision reforming the policy by substituting Dr. Swetnick for the corporation as the named insured. It is clear that the parties intended to cover all the employees of the enterprise conducted by Dr. Swetnick at the premises known as No. 10 Montague Terrace. Long before the occurrence of the accident, the insurance carrier was chargeable with knowledge of the fact that Dr. Swetnick's corporation merely held title to the premises and had no employees and that the premium which it received for the policy was based upon the payroll of Dr. Swetnick's employees. The carrier must be deemed to have intended to insure the enterprise upon whose payroll the premium was based. The insurance carrier's effort to alter the classifications after the occurrence of the accident so as to eliminate the claimant cannot have any effect on its liability. In any event, the coverage of the policy is not restricted by the classifications; they are relevant only for the purpose of computing the premium. The power of the board to reform a workmen's compensation

insurance policy in appropriate circumstances "is no longer in doubt." (*Matter of Haskell* v. *Hitchcock*, 262 App. Div. 309, 312.) "The name of the insured in the policy is not always important if the intent to cover the risk is clear." (*Matter of Lipshitz* v. *Hotel Charles*, 226 App. Div. 839, 840, affd. 252 N. Y. 518.) Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board. Present — Foster, P. J., Bergan, Coon, Halpern and Imrie, JJ.