2004 OK CIV APP 49

**ROADS WEST, INC., Petitioner,**

v.

**Neal AUSTIN; TTC Illinois, Inc.; Regency Insurance Company; CNA Insurance Companies; and The Workers' Compensation Court, Respondents.**

No. 99,568.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 19, 2003.

Rehearing Denied March 12, 2004.

Certiorari Denied May 17, 2004.

Matthew J. Graves, Oldfield, Coker & Graves, Oklahoma City, OK, For Petitioner.

Michael James King, M. Jean Holmes, Winters, King & Associates, Inc., Tulsa, OK, For Respondent, Neal Austin.

J. David Terrell, Oklahoma City, OK, For Respondent, Regency Insurance Co.

Paul V. McGivern, Jr., J. Heath Lofton, McGivern, Gilliard & Curthoys, Tulsa, OK, For Respondent, CNA Insurance Companies.

Opinion by CAROL M. HANSEN, Judge.

¶1 Petitioner, Roads West, Inc. (Employer), seeks review of an order of a three-judge panel of the Workers' Compensation Court, affirming the decision of the trial court which found Respondent, Neal Austin (Claimant) was employed by Employer when he sustained an accidental personal injury to the left leg arising out of and in the course of Claimant's employment. The trial court found TTC Illinois, Inc. (TTC) was not Claimant's employer and dismissed it as a party. It also found neither CNA Insurance Companies (CNA) nor Regency Insurance Company (Regency) had issued policies providing coverage in this matter and dismissed both insurance companies as parties. We vacate as to the dismissal of TTC, CNA, and Regency as parties, and remand for further proceedings consistent with this opinion.

¶2 Claimant brought a workers' compensation claim against Employer to recover benefits for injuries he sustained on July 9, 2001, in a rollover accident while he was driving Employer's truck. Employer denied Claimant was its employee and moved to join TTC as an additional party. It later moved to join CNA, Regency, and TTC's officers, but then withdrew the motion as to the TTC officers.

¶3 TTC appeared, answered, moved to dismiss, and filed notice of its pending bankruptcy case and automatic stay of actions to recover claims against it. Regency specially appeared and moved to dismiss the claim against it, asserting it had not been served process and had not collected any premium related to any Oklahoma employee. CNA moved to dismiss, asserting it had not provided workers' compensation insurance coverage to TTC, or in the alternative, any coverage was excess coverage [1] only and not first-dollar coverage. Employer moved to strike CNA's defenses, asserting it had violated court orders regarding discovery.

¶4 At trial on December 18, 2002, all parties stipulated Claimant injured his left leg in a single-event injury falling under the Workers' Compensation Act, and that Claimant was temporarily totally disabled and in need of further medical treatment. The dispute among the parties related only to who was responsible for paying Claimant's benefits.

---

1. "An excess insurance policy is one which by its terms provides coverage that is secondary to the primary coverage; there is usually no obligation to the insured until after the primary coverage limits have been exhausted." *U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp.,* 2001 OK 81, 37 P.3d 828, 831.

¶ 5 Employer's position was it transferred its employees to TTC, which was an employee leasing organization. It asserted Claimant was TTC's employee, and was covered by TTC's insurers, CNA and Regency. Employer argued its liability, if any, was secondary, and could not be determined until TTC's liability was determined. Because TTC was in bankruptcy and the automatic stay had not been lifted, Employer argued the trial court had no jurisdiction to determine any liability against Employer. Employer also argued it had been denied due process because it had not been able to obtain documents from TTC and because CNA had hindered its ability to defend by not timely providing discovery materials. The trial court denied Employer's motion to strike CNA's defenses and heard evidence on the remaining issues.

¶ 6 The trial court issued an order finding Employer and TTC had entered into a service agreement under which TTC agreed to provide payroll services and workers' compensation insurance coverage. It found that under the terms of the agreement, the employees for whom TTC provided services were to remain the employees of Employer and not become the employees of TTC. Therefore, the trial court found Employer was Claimant's employer. It *sua sponte* dismissed TTC with prejudice. The trial court found neither CNA nor Regency had ever entered an insurance contract to provide coverage for Oklahoma employees and dismissed both with prejudice. It awarded benefits to Claimant against Employer. Employer appeals from this order with twelve contentions of error.

I

 ¶ 7 Employer's first contention of error is the trial court lacked jurisdiction to proceed with trial because (1) TTC was in bankruptcy and the automatic stay had not been lifted, and (2) notice of trial was never provided to TTC. Pursuant to the Bankruptcy Code, 11 U.S.C. § 362(a)(6), the filing of a bankruptcy petition operates as a stay of any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. However, nothing in the statute extends the stay to causes of action against non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor. *Ni Fuel Co., Inc. v. Jackson,* 257 B.R. 600, 615 (N.D.Okla.,2000). Claimant's claim against Employer was not stayed by TTC's bankruptcy petition. The trial court did not violate the automatic stay by proceeding to trial on this claim.

 ¶ 8 Employer asserts it raised the issue of notice to TTC before the trial court. However, the portions of the record it cites relate only to TTC's bankruptcy and not to the issue of notice. We will not consider questions not presented to and passed upon by the trial court. *Von Stilli v. Young,* 1950 OK 137, 203 Okla. 86, 219 P.2d 224, 228.

II

¶ 9 Employer's second, third, fourth, and fifth contentions of error challenge the trial court's rulings relieving CNA of liability for insurance coverage for Claimant's claims. The trial court found,

THAT [CNA] did not issue a valid policy of workers' compensation insurance in the State of Oklahoma on behalf of [TTC]. The Court finds that the only [CNA] policy of insurance ever contemplated for [TTC] was for excess coverage only, contingent upon [TTC] obtaining self-insured status in each state for which coverage was to be provided. While there is evidence that premiums were paid on a nationwide policy, those premiums only applied to states where [TTC] had obtained self-insured status. [TTC] never sought or obtained an "own risk permit" under the laws of the State of Oklahoma to render itself a self-insured employer in this jurisdiction. Therefore, no contract of insurance between [CNA] and [TTC] ever existed with respect to the State of Oklahoma. The payment of premium on insurance coverage applicable to other states does not effect any estoppel within Oklahoma, when the condition precedent for such coverage—self insured status for [TTC]—was never secured or even sought by [TTC] within Oklahoma. Accordingly, [CNA] is DISMISSED, with prejudice, and without

liability in the claim for compensation filed herein.

Employer contends (1) "[t]he binder issued by CNA provided coverage to the claimant," (2) "[t]he trial court lacks jurisdiction to rescind CNA's binder," (3) "[t]he trial court erred when it did not hold CNA was estopped to deny Claimant coverage," and (4) "[t]he trial court erred in its finding that CNA only provided excess coverage."

¶ 10 The service agreement between Employer and TTC provided TTC would "obtain and pay the costs of providing all necessary and legally required workers' compensation . . . insurance coverage" for enrolled employees. According to Gerald Caffrey, an underwriter for Wexford Underwriting Managers, Inc. (Wexford), TTC's insurance broker contacted him for a quotation for excess workers' compensation coverage for TTC. Caffrey said Wexford was the managing general agent for CNA and had a contract with CNA that allowed Wexford "to underwrite excess workers' compensation for qualified self-insureds." He said he did not have authority to underwrite first-dollar coverage.

¶ 11 Caffrey testified he submitted to the broker a quotation stating the terms and conditions under which Wexford would issue a policy to TTC. The quotation stated the type of insurance was "Excess Workers Compensation and Employers Liability," and the states of coverage were those where "the insured is a qualified self insurer for Workers Compensation." Caffrey said he issued a binder for the policy. The binder stated the type of insurance was "Excess Workers Compensation and Employers Liability," with the insured's retention set at $1,000,000.00 per occurrence for workers' compensation claims. It included Oklahoma in the listing of states of coverage, but stated, "Coverage provided under this policy will only apply to those states where the Insured is a qualified self-insured."

¶ 12 Caffrey sent certificates of insurance to the states listed on the binder, including Oklahoma. The certificate sent to the Oklahoma Workers' Compensation Court stated CNA had issued an excess insurance policy to TTC effective from May 24, 2001 to May 24, 2002.

¶ 13 Caffrey testified he later learned TTC was not a qualified self-insured in any state. Based on CNA's instructions, he sent letters to TTC and its broker notifying them the policy was being rescinded and the premium would be refunded. Wexford sent a check for the refunded premium to the broker. Caffrey sent a notice of rescission to the Oklahoma court on June 29, 2001, and the court received it on July 5, 2001.

¶ 14 The workers' compensation court has exclusive jurisdiction to determine and enforce a compensation risk carrier's liability to a claimant. Its jurisdiction necessarily "includes cognizance to decide the central issue-whether at the time of the claimant's injury a contractual relationship subsisted between the employer, qua insured, and its insurer." *State Ins. Fund v. Brooks,* 1988 OK 50, 755 P.2d 653, 657. The court may interpret and construe the policy incident to its determination of liability, but it has no power to reform a workers' compensation insurance policy. *Mid–Continent Cas. Co. v. Miller,* 1969 OK 2, 451 P.2d 932, 933.

¶ 15 Insurance is a contract, and the relationship between the insured and insurer is contractual in nature. *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, 883. The essential elements of an insurance contract are the same as for any other contract. In order to create a contract of insurance, there must be a meeting of the minds of the contracting parties upon all the material terms and provisions of the contract. *Niagara Fire Ins. Co. v. Aebischer,* 1934 OK 684, 169 Okla. 551, 44 P.2d 5, 7. The parties are free to agree upon the terms of the contract and may limit or restrict an insurer's liability. However, under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy. *Shepard v. Farmers Ins. Co., Inc.,* 1983 OK 103, 678 P.2d 250, 251.

¶ 16 Pursuant to the estoppel act of the Workers' Compensation Code, 85 O.S.

2001 § 65.2 and 65.3 [2], "[a]n insurer who has collected premiums under a workers' compensation policy computed on claimant's wages is estopped to deny the insured's status as a covered employer." *Muscogee (Creek) Nation v. Smith,* 1997 OK 66, 940 P.2d 498, 501. The purpose of the estoppel act is to "prevent both an employer's and an employee's ensnarement in the false belief that compensation has been provided, only later to discover the purchased protection to be unavailable." *Little v. Muscogee (Creek) Nation,* 1997 OK 57, 938 P.2d 739, 744. If, at the time of a claimant's injury, an insurer accepted premiums computed on a claimant's wages under a policy insuring the employer against liability under the Workers' Compensation Act, the insurance contract is conclusively presumed to be for the benefit of the injured worker. *Id.*

¶ 17 The record in the instant case shows CNA and TTC never had a meeting of minds on an insurance contract. However, the undisputed evidence shows CNA's binder included Oklahoma in its listing of states of coverage, and CNA issued a certificate of insurance to Oklahoma. Claimant was an enrolled employee for whom TTC was responsible for providing workers' compensation insurance coverage. TTC paid a premium to CNA to cover its enrolled Oklahoma employees. Therefore, the trial court erred in ruling the payment of premium to CNA did not effect estoppel within Oklahoma.

CNA is estopped from denying coverage to any employee injured during the period for which it accepted premiums.

¶ 18 Claimant was injured on July 9, 2001. CNA accepted a premium for excess insurance coverage for the period May 24, 2001, to May 24, 2002, but rescinded the policy, notifying the Oklahoma Workers' Compensation Court of the rescission on July 5, 2001. Pursuant to 85 O.S.2001 § 64(G), a workers' compensation insurance policy may not be cancelled until ten days after notice to the court administrator. Therefore, the effective date of CNA's rescission was July 15, 2001. Because Claimant's injury occurred after the payment of premium for the policy and before the effective date of its rescission, the policy is conclusively presumed to be for Claimant's benefit.

¶ 19 CNA, therefore, is liable for the insurance coverage for which the premium was paid, as stated in the binder, to-wit, excess workers' compensation and employer liability, with the insured's retention set at $1,000,000.00 per occurrence for workers' compensation claims. The trial court erred as a matter of law in dismissing CNA with prejudice. CNA must remain a party in this matter, but will have no liability unless Claimant's workers' compensation benefits exceed $1,000,000.00.

### III

¶ 20 Employer's sixth and seventh contentions of error challenge the trial court's find-

2. Section 65.2 provides,

Every employer and every insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Workers' compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer in a hazardous employment subject to and covered by the Workers' compensation law if such person receives an accidental personal injury arising out of and in the course of his employment, during the period for which such premium was so received, regardless of the type of business in which the employer was engaged or the type of employment in which the employee was engaged at the time of such injury.

Section 65.3 provides,

Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Workers' Compensation Act shall be conclusively presumed to be a contract for the benefit of each and every person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided by the Workers' Compensation Act regardless of the type of business in which the employer of such person is engaged or the type of work being performed by the employee at the time of any injury received by such employee arising out of and in the course of his employment, which contract may be enforced by such employee as the beneficiary thereof.

ings that the insurance provided to TTC by Regency was limited to clerical workers in Illinois and that no evidence was presented Regency was ever paid premiums for Oklahoma employees. Employer argues Regency's policy stated it applied to all states. It argues TTC paid premiums to Regency based on Claimant's wages, and Regency never gave notice to the court regarding cancellation.

¶ 21 An insurer's liability to its insured is defined by the insurance contract. *Tulsa Junior College v. Urban Design Group, Inc.*, 2000 OK CIV APP 55, ¶ 11, 10 P.3d 233. If the terms of the contract are unambiguous, clear, and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties. *Phillips v. Estate of Greenfield*, 1993 OK 110, ¶ 10, 859 P.2d 1101. However, an insurance contract is a contract of adhesion because of the uneven bargaining position of the parties. Therefore, when there are ambiguities in the policy provisions, words of inclusion are liberally applied in favor of the insured and words of exclusion are strictly construed against the insurer. *Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 1996 OK 28, 912 P.2d 861, 864–865. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. *Id.* at 869.

¶ 22 The insurance contract between TTC and Regency comprised an "Information Page," with two extension schedules, and the policy itself, with a general section and six parts. The general section defined the insured as the employer named in Item 1 of the Information Page, and stated, "This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in item 3.A. states unless you have other insurance or are self-insured for such workplaces." Item 1 listed as the insured T.T.C. Illinois, Inc., at its Kankakee, Illinois address, and stated, "All usual workplaces of the insured at or from which operations covered by this policy are conducted are located at the address other wise herein: As per submitted schedule." The attached schedule again listed the Kankakee, Illinois address. However, Item 3.A. of the Information Page provided, "Part One of the policy applies to the Workers Compensation Law of the states listed here: All states or as approved by law." The general section defined "state" as any state of the United States of America and the District of Columbia.

¶ 23 Part One of the policy related to workers' compensation insurance. It provided, "We will pay promptly when due the benefits required of you by the workers compensation law." Part Five related to the premium for the policy, and provided the premium "will be determined by our manuals of rules, rates, rating plans and classifications." It also provided as follows:

**B. Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

. . .

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. . . .

. . .

**G. Audit**

You will let us examine and audit all your records that relate to this policy. . . . Information developed by audit will be used to determine final premium.

¶ 24 Item 4 of the information page stated the total estimated annual premium was $27,600,000.00, and referenced the extension

88

schedule "for detailed premiums informa-tion." The extension schedule contained a table for the calculation of premium. Under the column heading for "Classification of Operations" was the caveat, "Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy." The only entry in the column was "LOCATION 001— ILLINOIS CLERICAL." The estimated annual premium based on that employee classification was $28,000,000.00.

¶ 25 Courts of other states have interpreted similarly structured workers' compensation policies in determining whether the classification of operations specified in the policy limit the coverage of the policy. In *Thompson v. Harold Thompson Trucking,* 12 Kan. App.2d 449, 748 P.2d 430, 435 (1987), the Court concluded any limitation on the scope of coverage by the listed classification of operations would conflict with the coverage provision stating the insurer would "pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law." It adopted the construction most favorable to the insured and held the claimant was covered under the policy even though his job was not listed in the classification of operations.

¶ 26 In *Maryland Cas. Co. v. Sullivan,* 160 Tex. 592, 597, 334 S.W.2d 783, 787 (1960), the workers' compensation insurance policy classified the employees of an agricultural chemical business as "Seed Merchants-including operating of seed sorting machinery," but provided if the employer engaged in business other than those described and rated, then the employer would pay the premium on the other operations as prescribed in the manual. The court held the policy covered an employee killed while crop dusting, stating "[u]nder these provisions the [insurer] could have protected itself as to the premium due it for coverage of the pilot." *Id.*[3]

¶ 27 The insurance contract between Regency and TTC did not provide that the

work classifications defined the covered risk. To the contrary, the extension schedule itself provided the entries in the classification of operations table did not modify any of the other provisions of the policy. The policy stated the covered risk was "the benefits required of you by the workers compensation law." It expressly recognized the classifications were subject to audit and revision based on TTC's "actual exposures." Accordingly, we conclude the policy did not limit its coverage to Illinois clerical workers, but covered all of TTC's enrolled employees, including Claimant.

¶ 28 The Regency policy stated its effective period was from February 1, 2001 to August 1, 2001. TTC made three premium payments of $1,800,000.00 each. In June 2001, Regency attempted to terminate the policy for nonpayment of premium, but failed to give notice to the administrator of the Oklahoma Workers' Compensation Court as required by 85 O.S.2001 § 64(G). Regency argues it cannot be required to give notice of cancellation of coverage it did not know existed. However, the policy itself states it covers all TTC's workplaces in any state of the United States and the District of Columbia unless TTC has other insurance or is self-insured in those workplaces. Therefore, Regency agreed to cover TTC's operations in Oklahoma. Regency also argues TTC cancelled the contract when it obtained replacement coverage from CNA, relieving Regency of liability even if it failed to file notice of termination. As discussed in Part II above, CNA's liability is for excess coverage only. Therefore, any coverage provided CNA does not replace coverage provided by Regency. Regency is liable for workers' compensation benefits to TTC's enrolled Oklahoma employees pursuant to its policy. The trial court erred as a matter of law in finding Regency's coverage was limited to clerical workers in Illinois and in dismissing Regency as a party.

IV

¶ 29 Employer's eighth contention of error is its due process rights were denied by

3. *See also Black v. Sweinick,* 281 A.D. 997, 998, 120 N.Y.S.2d 663, 664 (1953) ("the coverage of the policy is not restricted by the classifications; they are relevant only for the purpose of computing the premium."); and *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.,* 277 F.3d 232, 238 (2002) ("The question before us is whether the Policy's classification listings themselves constitute a limitation.... The Policy simply fails to provide that the classifications define the covered risks.").

the trial court's failure to continue the trial. Employer does not assert it requested a continuance and it provides no record citation showing it sought such relief. We will not consider questions not presented to and passed upon by the trial court. *Von Stilli v. Young,* 1950 OK 137, 203 Okla. 86, 219 P.2d 224, 228.

## V

¶ 30 Employer's ninth contention is the trial court erred in not granting relief for CNA's and Regency's failure to comply with discovery. The trial court may exercise its discretion in imposing sanctions for failure to comply with discovery orders. *Skinner v. John Deere Ins. Co.,* 2000 OK 18, 998 P.2d 1219, 1224. By questioning counsel at trial, the trial court determined the discovery it ordered had eventually been accomplished, although not within the ordered time frame. It refused to strike the defenses of CNA and Regency, but reserved the issue of taxing costs for a noticed deposition for which CNA failed to appear. We find no abuse of discretion in the trial court's action.

## VI

¶ 31 Employer's tenth, eleventh, and twelfth contentions of error relate to the trial court's findings regarding the status of Employer and TTC as Claimant's employer. Employer contends (1) it was relieved from liability by 85 O.S.2001 § 11(B)(1) and (2) because it was a principal employer who relied on a certificate of insurance provided by a subcontractor, (2) TTC, not Employer, was Claimant's employer pursuant to the Oklahoma Professional Employee Organization Recognition and Registration Act (PEO Act), 40 O.S.Supp.2002 § 600.7(E), and (3) the trial court erred in *sua sponte* dismissing TTC.

¶ 32 The Service Agreement between Employer and TTC provided,

Each party hereto shall have direction and control of the employees covered hereby to the extent necessary to fulfill its obligations hereunder and to comply with all applicable laws and regulations. However, T.T.C. shall not have direction and control

sufficient to render it the master or principal of any employee covered hereby for master-servant/principal-agent liability.

This contract creates a coemployment relationship as defined by the PEO Act, § 600.2(3)(a). The effective date of the PEO Act was November 1, 2002, after the date of Claimant's injury. Laws 2002, c. 64, § 2. A compensation claim is controlled by the laws in existence at the time of injury and not by laws enacted thereafter. *Knott v. Halliburton Services,* 1988 OK 29, 752 P.2d 812, 813. However, we reach the same result whether we apply the PEO Act or not. Under the parties' contract, both Employer and TTC have the status of Claimant's employer for workers' compensation purposes. Pursuant to the PEO Act, both parties are considered the employer for the purpose of coverage under the Workers' Compensation Act. § 600.7(E).

¶ 33 Because Employer and TTC have the relationship of coemployers and not that of principal and independent contractor, Employer is not entitled to the protections of 85 O.S.2001 § 11(B)(1) and (2). Employer is responsible for Claimant's workers' compensation benefits independently of TTC. The trial court did not err in finding Employer was Claimant's employer, but it did err as a matter of law in ruling TTC was not Claimant's employer under the service agreement. Accordingly, the trial court erred in dismissing TTC without prejudice. In the event the bankruptcy stay is lifted, the parties may pursue claims against TTC. Even if the stay is not lifted, the Workers' Compensation Court may decide claims against TTC's insurers. 85 O.S.2001 § 64(c).

¶ 34 For the foregoing reasons, the order of the three-judge panel affirming the order of the trial court is VACATED to the extent it (1) dismissed CNA, Regency, and TTC as parties, (2) held CNA not estopped to deny excess coverage, (3) held Regency's policy was limited to Illinois clerical workers and did not cover Claimant, and (4) held TTC was not Claimant's employer. The panel's order is SUSTAINED in all other respects and this

matter is REMANDED for further proceedings consistent with this opinion.

JONES, J., and MITCHELL, P.J., concur.