2008 OK CIV APP 92

**Don EMBRY, Plaintiff/Appellant,**

v.

**INNOVATIVE AFTERMARKET SYS-TEMS L.P. a/k/a IAS L.P. f/k/a Innovative Aftermarket Systems, INC. f/k/a IAS Inc., Twin City Fire Insurance Company, and Hartford Fire Insurance Company, Defendants/Appellees.**

No. 104,578.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 18, 2008.

Rehearing Denied May 27, 2008.

Certiorari Denied Sept. 22, 2008.

David Bernstein, Norman, OK, and Joseph T. Acquaviva, Jr., Wilson, Cain & Acquaviva, Oklahoma City, OK, and Joe B. Lawter, Norman, OK, for Plaintiff/Appellant.

Robert D. Nelon, Jon Epstein, Ashley Bowen Murphy, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, OK, for Defendants/Appellees.

Opinion by KEITH RAPP, Chief Judge.

¶1 The trial court plaintiff, Don Embry (Embry) appeals two orders granting partial summary judgment to the defendants, Innovative Aftermarket Systems, L.P. a/k/a IAS L.P. f/k/a Innovative Aftermarket Systems, Inc. f/k/a IAS, Inc. (IAS), Twin City Fire Insurance Company (Twin City), and Hartford Fire Insurance Company (Hartford). These two rulings, together with Embry's dismissal of his remaining claim, result in final disposition of the case. This appeal proceeds under the accelerated appeal provisions of Okla. Sup.Ct. R. 1.36.

## BACKGROUND

¶2 Embry, together with his daughter, purchased a Chevrolet truck from Davis Stanley Chevrolet (DSC). They financed the purchase with DSC and DSC assigned the installment contract to Tinker Federal Credit Union (TFCU).

¶3 As a part of the financing, Embry purchased from DSC a "Debt Relief Waiver Addendum" (DRWA) to the financing contract and paid $499.00.[1] This addendum, (DRWA), has for its purpose the protection of the debtor against owing a deficiency in the event the financed vehicle is totally destroyed or stolen, and not recovered, and the debtor's insurance does not pay the entire balance due on the financing contract because the fair market value of the car, the insured value, is less than the balance due. This circumstance occurs as a result of the vehicle depreciating in market value more rapidly than the financing contract is paid down.

¶4 IAS markets the DRWA protection to automobile dealerships, such as DSC, on behalf of underwriting insurance companies, here Hartford. The dealers are termed "producers" and authorized to issue the DRWA to automobile purchasers.[2] The automobile dealers then sell the DRWA protection to the automobile purchasers. The DRWA document specifically states that it is not an offer of insurance nor an insurance policy. The purchaser-debtor, upon occurrence of a loss, is required to file a claim with IAS's Administrator and the DRWA document specifies what documentation is required. The DRWA document also specifies that the documents submitted be legible and that the IAS Administrator may request "any other reasonable documentation."

¶5 As part of the DRWA program, IAS arranges for an insurance policy to reimburse, as the named insureds, the dealer and, by definition, purchasers from the dealer of dealer's financing contracts.[3] The dealer enrolls the lender, to whom the financing contract is assigned, under the blanket insurance. The purchaser-debtor, such as Embry, is not a named insured in the blanket policy. Here, IAS, through Hartford's third-party administrator, arranged for such a policy with Twin City.[4]

---

1. A copy of the addendum document is in the record as Defendants' Ex. 9, Tab 9, Record, Vol. 2. Embry's cost for the DRWA product was included in the total financing. Deposition Tonya Embry, page 19, Defendants' Ex. 6, Tab 6, Record, Vol. 2.

2. See Marketing Agreement, Defendants' Ex. A, Tab 1A, Record, Vol. 5.

3. See Twin City Insurance, Defendants' Ex. 31, Tab 31, Record, Vol. 3.

4. IAS entered into an agreement with The Evergreen Organization, Inc., as administrator, to market "loan and lease elimination products." Defendants' Exhibit B, Tab 1B, Record, Vol. 5. This agreement is conditioned on the program being fully insured.

¶ 6 Thus, in theory, when a vehicle is destroyed or lost by theft, a claim is made under the DRWA program, the deficiency is calculated and confirmed and payment is made. The purchaser-debtor has no exposure for a deficiency.

¶ 7 Here, Embry's daughter had a wreck causing total destruction of the truck. A balance of approximately $22,000.00 remained to be paid. After Embry's insurance company, Progressive Insurance Company (Progressive), notified Embry that it would pay only $12,365.92, Embry initiated a claim under the DRWA addendum.

¶ 8 Eventually, Progressive made the payment and, after other credits were accounted, TFCU made demand upon Embry for a deficiency of $9,040.35. A few months later, TFCU turned the matter to an attorney who filed suit for collection, despite the DRWA addendum.[5] Embry did not appear in or defend TFCU's action. Subsequently, a default judgment for $10,612.35 was entered against Embry. Embry made some installment payments on the judgment.

¶ 9 For a number of reasons, the processing of the DRWA claim extended over a period of time. Eventually, Hartford paid TFCU.

¶ 10 This case arises from Embry's claim that he was treated unfairly and negligently when he sought to invoke the DRWA payment provisions.[6] Embry claimed that he had an implied contract with the Defendants, or that he was a third-party beneficiary of the insuring arrangement, and that the Defendants breached their duty of good faith and fair dealing. He also claimed that the Defendants were negligent in the handling and administration of the claim.[7]

¶ 11 All Defendants filed two summary judgment motions. The first was directed to the contract-related claims and the second to the negligence-related claims. The trial court sustained both motions. Embry appeals.

## STANDARD OF REVIEW

¶ 12 The appellate standard of review in summary judgment is *de novo*. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. This means without deference. *Hulett v. First Nat'l Bank & Trust Co. in Clinton*, 1998 OK 21, 956 P.2d 879; *see, Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

¶ 13 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When, as here, a defendant moves for summary judgment without relying upon an affirmative defense, the defendant must show that: 1) no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pac. R.R. Co.*, 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd. Japan*, 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid*, 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946. The moving party must also show that it is entitled to judgment as a matter of law. Rule 13(e), Rules For District Courts, 12 O.S. Supp.2007, 12 O.S. ch. 2 app.

---

**5.** The Summary Judgment record does not establish that the DRWA addendum was actually included in the assignment of the financing agreement from DSC to TFCU. The Defendants' undisputed facts recite that the DRWA addendum was a part of the financing agreement assigned to TFCU, but the recital does not clearly indicate that the DRWA addendum (a separate document) was physically delivered to TFCU along with the financing statement. Moreover, there is no explanation of why TFCU resorted to legal proceedings to collect the deficiency rather than the DRWA addendum if TFCU had the

DRWA addendum as part of its records. It is also to be noted that TFCU and the Defendants Hartford and IAS did later communicate with each other to resolve the TFCU claims.

**6.** Embry has a separate action against DSC. The trial court allowed these actions to be consolidated only for purposes of discovery.

**7.** His final claim, violation of the Consumer Protection Act, was dismissed.

## ANALYSIS AND REVIEW

■ ¶ 14 The resolution of the appeal of the summary judgments turns on whether a legal relationship, arising from the DRWA product, exists between Embry and the Defendants, such that there is a duty on the part of the Defendants toward Embry. If there be such a legal relationship, the record discloses that issues of fact exist regarding whether the Defendants breached any duty owed to Embry, as well as whether and to what extent Embry contributed to his alleged damages.[8]

¶ 15 The determination of the existence of a legal relationship between Embry and the Defendants requires examination of the workings of the DRWA product. The parties have no material dispute about how the DRWA product is supposed to work or how it is created and marketed, although they disagree, for example, whether the DRWA program product is an insurance policy or that Embry is a third-party beneficiary in the arrangement.

¶ 16 The ultimate function of the DRWA product, in case of a total loss of the vehicle, is to pay the amount due the lender (the deficiency) after the lender receives insurance proceeds on the vehicle paid for by the debtor.[9] Thus, the depreciation on vehicles often exceeds the rate of amortization on the financing agreement covering the vehicle. When the debtor's primary insurance pays the fair market value upon a total loss, this sum then, more than likely, is an amount which does not liquidate the outstanding loan balance leaving a deficiency. When a deficiency occurs, the DRWA program product paid for by the debtor, Embry, is designed to pay that deficiency such that the debtor owes the finance company nothing.

¶ 17 In this case, Hartford created the DRWA product. IAS became the seller of the product to automobile dealerships, here DSC. DSC, in turn sold the DRWA product to its automobile purchasers, such as Embry, as a part of the financing agreement. Lenders, in this case TFCU, become participants by virtue of the assignment of the financing statement to them, including the DRWA program product. *To make the product work from the perspective of the dealer and lender as well as the customer, like Embry, Hartford underwrites the deficiency payments with insurance making the automobile dealership, DSC, and its assignee of the auto vehicle finance contract, here TFCU, named insureds.* Here, the insurance was provided by Twin City, a company related to Hartford for purposes of the summary judgment.[10]

¶ 18 Thereafter, in the event of a total covered loss of the vehicle, the borrower, Embry, is required to file a claim and submit documentation listed in the DRWA addendum agreement.[11] In addition, the Twin City insurance policy naming DSC and its assignee, here TFCU, as insureds, imposes duties upon its named insureds in cases of loss.[12] In part, the policy reads as follows:

> J. DUTIES IN THE EVENT OF "LOSS": The "Named Insured" *must see* that the following are done in the event of "loss" to "covered vehicles": (emphasis added)
>
> . . . .
>
> 2. Give the "Company" prompt notice of the "loss."[13] Include a description of the property involved.

8. Contributory negligence is a jury question. Okla. Const. Art. 23, § 6.

9. *See* IAS's DRWA promotional materials. Plaintiff's Exs. 13, 14, Tabs 13, 14, Record, Vol. 5. The Administrative Services Manager of IAS testified that the DRWA addendum stated that it was not insurance in order to make certain that customers would obtain primary insurance and not rely upon the DRWA to pay the debt. The witness characterized the DRWA product as secondary insurance. Deposition Jarrett, p. 78, Defendants' Ex. J., Tab 1A(J), Record, Vol. 5, and Plaintiff's Ex. 4, pp. 52–53, Tab 4, Record, Vol. 5.

10. The parties also refer to a third-party administrator which processes claims on behalf of Hartford and Twin City, but that entity is not part of the DRWA product.

11. DRWA document, Defendants' Ex 9, Tab 9, Record, Vol. 2.

12. Twin City insurance policy, Defendants' Ex. 31, Paragraph J, Tab 31, Record, Vol. 3.

13. Paragraph K defines "loss" in terms of the difference between the outstanding balance of the loan and the actual cash value of the vehicle, that is the deficiency. Twin City insurance poli-

. . . .

8. Send the "Company" a signed, sworn statement of "loss" containing the information requested to settle the claim. The "Named Insured" must do this within sixty (60) days after the "Company's" request. The "Company" will supply the "Named Insured" with the necessary forms.

9. *Promptly send the "Company" any legal papers or notices received concerning the "loss."* (Emphasis added.)

10. Cooperate with the "Company" in the investigation or settlement of the claim.[14]

¶ 19 This Court finds that Embry purchased a product from DSC which product was created by Hartford and sold by IAS. In order to make the product function as intended, there had to be a mechanism to pay the deficiency, otherwise a deficiency waiver from a financing entity would be gratuitous and unenforceable. Thus, the mechanism or "engine" that makes the DRWA work is the insurance that covers the deficiency. If the insurance ingredient of the DRWA program product was absent, the DRWA product would be worthless.

¶ 20 Moreover, it is undisputed that the customer's (Embry) payment for the DRWA program product initiates the contract for the stated beneficiaries and triggers the contract coverage for the named beneficiaries and, until that payment is made by the debtor, the relationships among Hartford, Twin City, the named insureds (DSC and TFCU), and IAS lie dormant. The customer's pay-

ment is then distributed among the automobile dealer, IAS, and the insurers.

¶ 21 Based upon the undisputed portion of the record, this Court holds that when Embry parted with his $499.00 for payment to DSC for the DRWA program product, the product he purchased constituted a promise of one or more third parties (IAS, Twin City, and Hartford) to pay his debt (deficiency) upon the happening or occurrence of certain conditions (total loss by accident or theft) as evidenced by the DRWA addendum, euphemistically called "Debt Relief Waiver" (because the debt-deficiency is not waived, but is paid by the third party.)[15] Thus, Embry's legal status is similar to, but different from, that of an intended beneficiary of a contract, as defined in Section 302 of the Restatement (Second) of Contracts.[16] Although Embry benefits from the performance of others not directly a party to his financing contract, he is not a classic third-party beneficiary because he is the contracting party and payor of the funds initiating the contract of coverage. The distinction between Embry and the usual "intended beneficiary" is that the latter has not parted with the consideration, whereas here Embry paid the consideration that triggered the performance obligations.

¶ 22 The DRWA program product purchased by Embry has the attributes of a policy of insurance. However, the DRWA addendum contains language disclaiming that it is insurance coverage or an insurance policy.[17] Clearly, the arrangement between

cy, Defendants' Ex. 31, Paragraph K, Tab 31, Record, Vol. 3.

14. The record does not show any compliance with Paragraph J by DSC or TFCU or that Twin City or Hartford demanded compliance. Moreover, the record does not reconcile whether any legal conclusions can be drawn from the existence of two claim filing duties. Also, it would be speculation to make any attempt to determine whether compliance with Paragraph J would have prevented the circumstances leading to this lawsuit.

15. The "waiver" language borders on deception and misrepresentation. The deficiency is not waived or forgiven—it is paid by the insurer, an entity not a named party to the financing contract. This Court reaches no conclusions regarding DSC, as DSC is not a party to this action.

16. The Restatement reads:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) *the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.* (Emphasis added.)
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

17. The DRWA document states: "I understand that this Debt Relief Addendum is not an offer of insurance coverage" and "This Waiver Addendum is not an insurance policy."

Twin City/Hartford and DSC/TFCU involves insurance. However, the DRWA addendum contains a disclaimer and an acknowledgment that it is not insurance. The issue is made more complex by the definitions contained in the Oklahoma Insurance Code:

"Insurance" is a contract whereby one undertakes to indemnify another *or to pay a specified amount upon determinable contingencies.* (Emphasis added.)

36 O.S.2001, § 102.

"Casualty insurance" . . . includes:

. . . .

(11) Miscellaneous insurance, which is insurance against any other kind of loss, damage, or liability properly a subject of insurance and not within any other kind of insurance as defined in this article, if such insurance is not disapproved by the Insurance Commissioner as being contrary to law or public policy.

36 O.S.2001, § 707(11).

As used in the Oklahoma Producer Licensing Act:

. . . . .

10. "Limited line credit insurance" includes credit life, credit disability, credit property, credit unemployment, involuntary unemployment, mortgage life, mortgage guaranty, mortgage disability, *guaranteed automobile protection insurance, known as "gap" insurance,* and any other form of insurance offered in connection with an extension of credit that is limited to partially or wholly extinguishing that credit obligation that the Insurance Commissioner determines should be designated a form of limited line credit insurance. (Emphasis added.)

(11) "Limited line credit insurance producer" means a person who sells, solicits, or negotiates one or more forms of limited line credit insurance coverage to individuals through a master, corporate, group or individual policy.

36 O.S.2001, § 1435.2(10) and (11).[18]

¶ 23 The undisputed facts of this case show that Embry purchased and paid for a product that had for its purpose protection to him preventing him from owing a deficiency to the financing entity in the event of a total loss of his vehicle by accident or theft. The obligation to pay the deficiency is conditioned only upon the happening of the event and establishment of the "loss," that is, the destruction or unrecovered theft of the vehicle where the vehicle's primary insurance does not pay the balance due on the financing agreement.

■ ¶ 24 This Court holds that the DRWA program product purchased and paid for by Embry constitutes a contract of insurance.[19] *Young v. Stephenson,* 1921 OK 164, 200 P. 225.[20] The DRWA Addendum is a contract

**18.** In its agreement to sell DRWA to dealers, IAS was required to be licensed. The record does not reflect whether DSC held a license, or that DSC is exempt from license requirements. *See* 36 O.S.2001, § 1435.5 (when license not required); Okla. Admin. Code 365:25–3–16 (2002) (examination exemptions for limited representatives.) The DRWA product was sold through a master policy issued by Twin City. Paragraph 1, Defendants' Ex. A, Tab 1A, Record, Vol. 5. DSC is referred to as a "producer" in its agreement with IAS. Defendants' Ex. A, Tab 1A, Record, Vol. 5. *See also* n. 10.

**19.** It may be noted that, under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy. *Roads West, Inc. v. Austin,* 2004 OK CIV APP 49, ¶ 15, 91 P.3d 81, 85.

**20.** In *Young,* plaintiffs purchased stock in the corporation. Young guaranteed against loss and that the stock should be worth a certain price at a specified time. The stock did not rise to the value guaranteed by Young and he acquired the stock from the plaintiffs, giving promissory notes, cash and certain agreed credits in payment He failed to pay the notes and plaintiffs filed suit. Young defended on the theory the guaranty agreement constituted a void gaming contract. The Court determined the contract to be one in the nature of a contract of guaranty insurance. On doing so the Court held, at Syllabus 3 and 4:

3. In a general sense, insurance is a contract for a consideration to pay a sum of money upon the happening of a particular event or contingency.

4. Almost any contingent or unknown event, however, whether past or future, which may indemnify a person having an insurable interest or create a liability against him may be insured against. Whatever has an appreciable pecuniary value and is subject to loss or deterioration, or of which one may be deprived, or that he may fail to realize, whereby his pecuniary interest is or may be prejudiced, may properly constitute the subject-matter of insurance.

in which, for consideration, a sum of money is to be paid upon the happening of an event or contingency and this is an insurance contract. *Id.;* 1 Couch on Insurance, § 1:6 (3rd Ed.2007); *see also Epmeier v. U.S.,* 199 F.2d 508, 509–10 (7th Cir.1952) ("Insurance, of ancient origin, involves a contract whereby, for an adequate consideration, one party undertakes to indemnify another against loss from certain specified contingencies or perils. It is contractual security against possible anticipated loss. Risk is essential, and equally so, a shifting of its incidence from one to another."); *Commissioner of Int. Rev. v. W.H. Luquire Burial Ass'n. Co.,* 102 F.2d 89 (5th Cir., 1939) (Luquires's agreement to provide burial benefits for a consideration equated to an insurance contract to tax company as an insurance company); *State ex rel. Duffy v. Western Auto Supply Co.,* 134 Ohio St. 163, 16 N.E.2d 256, 259 (1938) (applying the accepted definition of insurance and holding a contract whereby seller of automobile tires guaranteed the tires sold against defects in material or workmanship without limit as to time, mileage, or service, and expressly guaranteed them for a specified period against certain named injuries and contracted to indemnify the purchaser should the tire fail within the replacement period specified without limitation as to cause of such failure, was a contract substantially amounting to 'insurance,' within provisions of statute requiring guarantor or insurer to comply with the laws of the state authorizing and regulating the business of insurance).

¶ 25 The workings and purpose of the DRWA program product meet all elements of an insurance product as defined by the accepted definition of insurance, as well as the Oklahoma Insurance Code. *See, Epmeier,* 199 F.2d at 509–10. The language of the disclaimers in the DRWA addendum do not alter this conclusion, because the references to "insurance coverage" and "insurance policy" do not alter the purpose and function of the DRWA program product. *National*

*Auto Serv. Corp. v. State,* 55 S.W.2d 209, 211 (Tex.Ct.Civ.App.1932) ("Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents, and import, and not necessarily by the terminology used, and even though it contain declarations to the contrary."); 1 Couch on Insurance § 1:8 (3d Ed.2007).[21] In *Schoepflin v. Tender Loving Care Corp.,* 631 So.2d 909 (Ala.1993), Schoepflin purchased a new car protection contract from TLC that provided for reimbursement for mechanical failure with certain excluded causes. The contract made no mention of insurance and TLC was not qualified to be in the insurance business. The Court ruled that the contract was an insurance contract because it met the definition of an insurance contract. *Schoepflin,* 631 So.2d at 911–12 (insurance in any form is what the cases and statutes define it to be).

¶ 26 Embry is entitled to the benefit of his bargain. Here, his "bargain" is a DRWA program product composed of an issuer, an administrator of claims, and an underwriter. All three components must function and perform, otherwise the DRWA product is of no value. If he is denied the benefit of that bargain and sustains damages through the bad faith or negligence of any entity that is a necessary component of the bargained-for product in order to make it function as intended, then he is entitled to recover his damages from that entity.

¶ 27 The facts regarding that last aspect of the case are clearly in dispute. What is not in dispute are the facts demonstrating what sort of product is represented by the DRWA program product together with how it is designed to function. This Court holds that the DRWA program product paid for by Embry is an insurance policy and that, because of its design, IAS, Hartford and Twin City may, if the proven facts warrant, be held liable for bad faith or negligence.[22]

---

**21.** The contract in *National Auto Service Corp.* contained the following disclaimer:

> It must be clearly understood that this is not insurance, as the corporation never pays its members any money, as indemnity, except to repair any damage to member's automobile at

the corporation's authorized repair shop as hereinabove provided.

*Id.* at 210.

**22.** Again, this Opinion reaches no conclusions regarding DSC.

¶ 28 Therefore, the two summary judgments are reversed, and the cause is remanded for further proceedings.

¶ 29 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

FISCHER, P.J., and WISEMAN, J., concur.