2010 OK CIV APP 33

**ALEA LONDON LTD.,**
Plaintiff/Appellant,

v.

**CANAL CLUB, INC., d/b/a The Wild Coconut, an Oklahoma Corporation; Charlena J. Kennedy, Individually; and Erica L. Gilmore, Individually, Defendants/Appellees,**

and

**Tanya Wistrand, Individually; Stephen Wistrand, Individually; Diversified Historic Properties, Inc., an Oklahoma Corporation, Defendants.**

No. 107139.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 23, 2009.

Rehearing Denied Dec. 18, 2009.

Robert W. Hayden, Speck & Hayden, Oklahoma City, OK, for Plaintiff/Appellant.

Mort Goodwin Welch, Welch & Smith, P.C., Oklahoma City, OK, for Defendant/Appellee, Canal Club, Inc.

Gary B. Homsey, Kevin E. Hill, Homsey, Cooper, Hill & Associates, Oklahoma City, OK, for Defendants/Appellees, Charlena J. Kennedy and Erica L. Gilmore.

CAROL M. HANSEN, Presiding Judge.

¶ 1 Alea London Ltd.[1] (Plaintiff) appeals a judgment which found the commercial general liability policy (CGL policy) it issued provided coverage for a damage award in another lawsuit (the underlying lawsuit) in favor of Erica L. Gilmore (Gilmore) and Charlena J. Kennedy (Kennedy) against Canal Club, Inc., d/b/a The Wild Coconut (Canal Club). We conclude the CGL policy does not provide such coverage under the circumstances presented, reverse the judgment of the trial court, and remand the case for entry of an order granting judgment in favor of Plaintiff.

¶ 2 The parties raise no disputes concerning the following events which underlie this appeal. George Romon Valle (Valle) was intoxicated when he entered Canal Club's business, The Wild Coconut. Once there, he had an altercation with another customer, and an employee escorted him outside the premises. Later, very early the next day, Gilmore's stalled car was on the right shoulder of I–40 near the Agnew exit in Oklahoma City, Oklahoma, when it was struck from behind by a car driven by Valle. Gilmore and Kennedy each suffered serious injuries. Valle was legally intoxicated at the time of the accident and later entered a plea of guilty to the charge of causing an accident with great bodily injury.

¶ 3 Gilmore and Kennedy filed a petition on December 26, 2006, which alleged Valle had been served liquor while he was noticeably intoxicated. They named Canal Club, Canal Club's sole shareholder Stephen Wistrand, and his wife Tanya Wistrand, also known as Tongyoo Wistrand (the Wistrands) and Valle as defendants in the underlying lawsuit. Canal Club tendered its defense in the underlying lawsuit to Plaintiff, which refused the tender because of liquor liability exclusions in the CGL policy. Canal Club had liquor liability coverage of $100,000 under a commercial liability policy with United States Liability Insurance Group's Mount Vernon Fire Insurance Company (Mount Vernon). Mount Vernon provided Canal Club's defense in the underlying lawsuit.

¶ 4 On July 19, 2007, Plaintiff filed a petition seeking a declaratory judgment determining its CGL policy did not provide coverage for Gilmore and Kennedy's claims and it had no duty to defend the underlying lawsuit. Plaintiff filed an Amended Petition for Declaratory Judgment on October 8, 2007 in which it claimed the policy excluded coverage for the claims in the Amended Petition filed on July 26, 2007 in the underlying lawsuit, and it had no duty to defend a lawsuit seeking damages to which its CGL policy did not apply or pay the amount of any judgment Gilmore and Kennedy might obtain in their

---

1.  Plaintiff is the insurer of Canal Club, Inc.

favor. The first cause of action in the Amended Petition in the underlying lawsuit continued to claim liability existed based upon service of alcohol to Valle when he was noticeably intoxicated. The second cause of action alleged Valle became intoxicated before entering Canal Club's premises, its employees escorted him from those premises while he was still in an intoxicated state, and those employees negligently breached a duty of reasonable care when they "failed to make sure" Valle did not leave the area outside its premises, get into his car, and drive while he was intoxicated. On October 19, 2007, Canal Club and the Wistrands answered and filed a counterclaim in Plaintiff's declaratory judgment lawsuit which argued Plaintiff had breached the CGL policy by refusing to participate in the defense of the underlying lawsuit and its liability under the second cause of action of the Amended Petition.

¶ 5 By the time of a December 17, 2007 non-jury trial limited to the issue of damages, the following occurred: (1) Gilmore and Kennedy had dismissed without prejudice all claims against the Wistrands, Brewer Entertainment, Inc., Bricktown Canal Properties, and Diversified Historic Properties, Inc., and claims against Canal Club in the first cause of their amended petition which alleged it had served Valle alcohol while he was intoxicated; (2) Diversified dismissed without prejudice cross-claims against Canal Club and the Wistrands in the underlying lawsuit; and (3) Plaintiffs dismissed without prejudice Diversified and the Wistrands from its declaratory relief action. The day after trial, Gilmore and Kennedy dismissed without prejudice all claims against Valle. Following Valle's dismissal, only resolution of liability under the second cause of action in the Amended Petition remained pending.

¶ 6 The trial court entered judgment against Canal Club and in favor of Gilmore and Kennedy in the underlying lawsuit. It awarded Gilmore judgment for a total of $2,201,643.41 (a $2,000,000 judgment, $1,973.52 for attorney fees, and $199,669.89 in prejudgment interest), and awarded Kennedy judgment for a total of $1,651,725.95 (a $1,500,000 judgment, $1,973.52 for attorney fees, and $149,752.43 in prejudgment inter-

est). By an agreed order filed on March 6, 2008, Gilmore and Kennedy each filed a counterclaim in Plaintiff's declaratory judgment action which alleged Plaintiff was liable under its CGL policy for the judgment against Canal Club in their underlying lawsuit.

¶ 7 Canal Club moved for summary judgment in Plaintiff's declaratory relief action and argued the liquor liability exclusion in the CGL policy did not apply and Plaintiff was liable for the judgment in the underlying lawsuit. The same day, Gilmore and Kennedy also moved for summary judgment. They incorporated Canal's motion into their own and presented only arguments regarding the application of the per occurrence coverage limits, liability for pre-judgment and post judgment interest, and liability for costs in light of Plaintiff's refusal to defend in the underlying lawsuit. Plaintiff filed a supplemental response and motion for summary judgment in which it argued the trial court could consider whether Canal Club had a legally cognizable duty to deny an intoxicated person access to his vehicle and it had no duty to defend or indemnify Canal Club for the claims because its policy did not apply.

¶ 8 The trial judge entered an order on April 28, 2009 which denied Plaintiff's motion for summary judgment and granted the motions for summary judgment of Canal Club, Gilmore, and Kennedy (Defendants). The judgment found the CGL policy provided coverage for Canal Club's liability to Gilmore and Kennedy. The trial judge ordered Plaintiff to pay the $1,000,000 per occurrence limit of the CGL policy and allocated $571,428 to Gilmore and $428,572 to Kennedy. Gilmore and Kennedy also received a joint and several judgment for $1,973.53 in taxable costs, and judgment for prejudgment interest and post-judgment interest. Canal Club also was granted judgment in the amounts awarded to Gilmore and Kennedy which totaled, respectively $882,355.36 and $661,824.97.

¶ 9 When considering Plaintiff's appeal, we first address the scope of the issues properly before us. Canal Club's liability was determined in the underlying lawsuit and is not before us. The only issue presented on ap-

peal is whether the CGL policy provided coverage and Plaintiff therefore was liable to pay available policy limits to Gilmore and Kennedy as a result of the judgment against Canal Club.

¶ 10 Summary judgment is only appropriate when there is no substantial controversy as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lowery v. Echostar Satellite Corporation*, 2007 OK 38, 160 P.3d 959. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. *Haworth v. Jantzen*, 2006 OK 35, 172 P.3d 193. Issues of law are reviewed *de novo*. *Kluver v. Weatherford Hospital Authority*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. That is, the appellate court exercises plenary, independent and non-deferential authority to re-examine a trial court's legal rulings. *Manley v. Brown*, 1999 OK 79, 989 P.2d 448.

¶ 11 Insurance is a contract, and an insurer's liability to its insured is defined by the contract. *Roads West, Inc. v. Austin*, 2004 OK CIV APP 49, 91 P.3d 81. Parties to an insurance contract are at liberty to cover such risks as they see fit, they are bound by the terms of their contract, and the courts are not at liberty to rewrite those terms. *American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, 89 P.3d 1051. The general declaration of insurance coverage determines an insurance company's liability and the insured's rights under the contract by identifying what risks are covered and excluded by the policy. *Dodson v. St. Paul Insurance Company*, 1991 OK 24, 812 P.2d 372. "The policy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." 1991 OK 24, ¶ 13, 812 P.2d at 377.

¶ 12 There is no dispute Plaintiff issued a CGL policy to Canal Club which had a liability limit of $1,000,000 per occurrence. Defendants argued the CGL policy provided coverage for the violation of a duty to prevent Valle from leaving the premises and driving his vehicle while he was intoxicated. Plaintiff claimed it had no liability for the judgment obtained in the underlying lawsuit because no such duty is recognized at law or exclusions applied.

¶ 13 In its response to Defendants' motions for summary judgment, Plaintiff argued Canal Club breached the CGL policy by failing to give timely notice in the underlying lawsuit of the dismissal of the dram shop action stated in the first cause of action in the amended petition, of its intent not to defend itself by contesting the claimed duty in the second cause of action, of its intent to "assume an obligation by confessing liability," and of failing to provide notice of the entry of judgment in the underlying lawsuit "until well after the time to appeal had run." It argues it cannot be liable as a matter of law for the basis of judgment in the underlying lawsuit because the duty claimed is not one imposed under Oklahoma law.

¶ 14 Canal Club claims it was relieved of any obligation to notify Plaintiff of its dismissal of claims in the amended petition and of the entry of the judgment once Plaintiff declined to provide a defense based upon a lack of coverage. On the contrary, an insured's failure to keep an insurer informed of critical post-denial developments may modify, excuse or provide a defense to the performance of an insurer's contractual duties. *See First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 1996 OK 105, 928 P.2d 298. Jumping analytically from the fact a judgment exists to imposing liability for the judgment under an insurance policy ignores the required intermediate step, a determination of coverage, the focus of the declaratory relief proceeding.

¶ 15 Defendants' citation to the general rule stated in the garnishment proceedings in *Greene v. Circle Insurance Company*, 1976 OK 173, 557 P.2d 422, that an insurer "who is required either by law or contract to protect another from liability" is bound by the result and material facts established in litigation does not advance analysis here. Applying that general rule here would beg the question because whether Plaintiff is "required either by law or contract" is precisely what is at issue in the declaratory judgment action.

¶ 16 Any liability to pay the judgment in favor of Gilmore and Kennedy derives from a duty to indemnify Canal Club for a risk covered under the provisions of the CGL policy. The Insuring Agreement provides for payment of "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' *to which this insurance applies.*" (Emphasis added.) Coverage must be predicated upon contractual provisions and the courts may not re-write the contract.

¶ 17 The CGL policy contains exclusions, including one for liquor liability[2] and one for liability "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," but the exclusion does not apply to liability for damages "the insured would have in the absence of the contract or agreement."

Plaintiff argued the basis of Canal Club's liability was an agreed assumption which would not otherwise exist. We agree.

¶ 18 No Oklahoma case is identified which addresses the duty Defendants claim Plaintiff had to prevent Valle, who was intoxicated, from leaving its premises and driving his vehicle. Defendants' cited authorities from other jurisdictions, including decisions not included in official reporters, are distinguishable on their facts[3] or because they employ an analysis not applicable to the circumstances here, such as negligent entrustment of previously confiscated access to a vehicle,[4] active placement of an intoxicated person in a vehicle,[5] affirmative acts by an employee which caused injury,[6] or a patron was injured by an attack, involvement in an altercation either inside or just outside a business, or by those involved in such an altercation,[7] which invoked duties to a business invitee, not third

**2.** The provision excludes coverage for:
"Bodily injury" or "property damage" for which *any insured may be held liable by reason of:*
(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.
(Emphasis in original.)

**3.** In *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F.Supp.2d 421 (E.D.Pa.1999), two patrons were struck by stray bullets fired by a police officer responding to a call because of another shooting during an altercation between an intoxicated off-duty officer and another patron. The two patrons were returning to a bar area after being prevented from leaving through a kitchen emergency exit. Liability and a duty to defend in the declaratory judgment proceeding were not premised upon failing to prevent an intoxicated patron from leaving but instead upon binding findings in underlying litigation that the injuries were proximately caused by negligence due to the employees' padlocking of the emergency exit.

**4.** In both *Western Heritage v. Giuliani*, 38 Fed. Appx. 974 (4th Cir. (S.C.) 2002) and the unpublished 1992 Ohio case, *Prince v. Buckeye Union Insurance Company*, 1992 WL 362578 (Ohio App. 5 Dist.), negligent entrustment of previously confiscated access to a vehicle, a circumstance not present here, is cited as the basis for insurer liability.

**5.** In *Auto–Owners Insurance Company v. JC KC, Inc.*, 1998 WL 766695 (Ohio App. 9 Dist.), another unpublished Ohio case, an intoxicated patron injured in accident which occurred after he was placed in the back seat of a car driven by another intoxicated patron.

**6.** In *Dennis v. The Finish Line*, 636 So.2d 944 (La.App. 1 Cir.1994), an employee loaded an intoxicated and unconscious patron into his car. He was awakened over five hours later by a bartender after the club closed and she had run a personal errand. While driving home, the patron ran the plaintiff off the road. As the plaintiff's vehicle returned to the road, it was struck by a vehicle driven by the bartender, who was following the patron to try to assure he reached his home. In *United National Insurance Company v. Penuche's, Inc.*, 128 F.3d 28 (1st Cir. (N.H.) 1997), a patron trying to stop other patrons from fighting was injured when an employee pinned his arms in a "bear hug," and he fell and struck obstructions.

**7.** Such circumstances are present in the cited cases *Insurance Company of North America v. Spangler*, 881 F.Supp. 539 (D.Wyo.1995), *Interstate Fire & Casualty Company, Inc. v. 1218 Wisconsin, Inc.*, 136 F.3d 830 (D.C.Cir.1998), *J.A.J., Inc. v. Aetna Casualty and Surety Company*, 529 A.2d 806 (Me.1987), *Mt. Hope Inn v. Travelers Indemnity Company*, 157 N.J.Super. 431, 384 A.2d 1159 (1978), and an unpublished Superior Court of Connecticut decision, *Proto v. Hermitage Insurance Company*, 2005 WL 1971113 (Conn.Super.).

parties encountered later, to warn or protect from assault.

¶ 19 In the well-reasoned decision *Capitol Indemnity Corporation v. Blazer*, 51 F.Supp.2d 1080, 1089 (D.Nev.1999), the Court, analyzed several cases which included claims a business negligently allowed a patron to leave in an intoxicated state, and, after taking note of divergent conclusions, found the "vast majority" have adopted an analysis which looks to whether there is a nexus between alcohol consumption and the allegations regarding intoxicated patrons who leave the premises. Applying this analysis, the Court distinguished *J.A.J. Inc. v. Aetna Casualty and Surety Company*, 529 A.2d 806 (Me.1987), in which the Court concluded an assault sustained by the intoxicated patron allowed to leave could have arisen without any alcohol consumption, from *Paradigm Insurance Company v. Texas Richmond Corporation*, 942 S.W.2d 645 (Tex. App.-Hous. (14 Dist.) 1997), where negligence necessarily depended upon the patron's intoxicated state. We find this analysis persuasive.

¶ 20 How Canal Club's claimed negligence is inextricably related to and dependent upon intoxication is shown by posing the simple question—if Valle had not been intoxicated, what duty would it have had to restrain his ability to leave its premises and later drive his car? The answer, clearly, is "none," and the proposed cause of action necessarily depends upon and is inextricably connected to intoxication.

¶ 21 At common law, establishments serving alcohol incurred no liability for injuries to third parties from the subsequent actions of intoxicated patrons because the patrons' voluntary consumption[8] supplied the required causation link to damages. The threshold question of law in any negligence action is whether a recognized duty was violated. *See Johnson v. Fine*, 2002 OK CIV APP 47, 45 P.3d 441. Recognition of the duty proposed here "would mean that if an obviously drunk person stumbled into a fast food restaurant, for example, that owner would have a duty to not allow the drunk to leave." *Preferred National Insurance v. Fat Investors, Inc.*, 842 So.2d 1068, 1069 (Fla.App. 4 Dist.2003). Canal Club, which Defendants claim did not serve Valle any liquor, is no different than this theoretical fast food restaurant. Tort law is not static, but no Oklahoma authority has been cited or found which adopts the sweeping duty proposed by Defendants.[9] Coverage under the CGL policy was not triggered by the basis for judgment in the underlying lawsuit.

¶ 22 Defendants were not entitled to judgment as a matter of law in the declaratory relief lawsuit because no liability arose under the CGL policy based upon the undisputed facts and circumstances. The orders finding such coverage and entering judgment under the CGL policy in favor of Gilmore, Kennedy, and Canal Club are reversed and the case remanded for entry of judgment in favor of Plaintiff.

REVERSED AND REMANDED.

MITCHELL, C.J., and JOPLIN, J., concur.

---

8. *See, e.g., Ohio Casualty Insurance Co. v. Todd*, 1991 OK 54, 813 P.2d 508, in which the Oklahoma Supreme Court refused to extend the common law cause of action recognized in *Brigance v. Velvet Dove Restaurant*, 1986 OK 41, 725 P.2d 300, in favor of the general public to an adult who voluntarily became intoxicated and was injured by his own inability to drive a vehicle properly.

9. *Accord, Kovesdy v. Utica Fire Insurance Company*, 119 Ohio App.3d 547, 695 N.E.2d 1165 (1997), in which the Court rejected a similar attempt to obtain coverage for a separate negligence claim for a bar's failure to prevent an intoxicated minor it had served from leaving, after which he drove and caused a collision with a fatality. The Court distinguished the unpublished case *Prince*, because the liquor-serving establishment there had confiscated keys, thereby assuming a duty, and had negligently returned them. Applying *Kovesdy*, it would defy logic to impose a separate duty upon an entity which did *not* serve the intoxicated person when no such liability existed for one who did so serve.