2015 OK CIV APP 34

**ADUDDELL LINCOLN PLAZA HOTEL d/b/a Renaissance Center, L.L.C., an Oklahoma Limited Liability Company, Plaintiff/Appellee/Counter–Appellant,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Defendant/Appellant/Counter–Appellee,**

and

**Insurance Professionals II, an Oklahoma Corporation, Defendant.**

**Nos. 111,651, 112,176.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 6, 2014.

Rehearing Denied Nov. 25, 2014.

Certiorari Dismissed April 1, 2015.

---

Susan B. Loving, Shannon Forth Davies, George S. Freedman, Courtney D. Powell, Lester, Loving and Davies, P.C., Edmond, Oklahoma, for Plaintiff/Appellee/Counter–Appellant.

Ronald L. Walker, George D. Davis, Tomlinson, Rust, McKinstry, Grable, Oklahoma City, Oklahoma, for Defendant/Appellant/Counter–Appellee.

BRIAN JACK GOREE, Acting Presiding Judge.

¶1 This appeal and counter-appeal arise from the trial court's judgment based on a jury verdict in favor of Plaintiff/Appellee/Counter–Appellant, Aduddell Lincoln Plaza Hotel d/b/a Renaissance Center, L.L.C. (Hotel), on its insurance bad faith claim against Defendant/Appellant/Counter–Appellee, Certain Underwriters of Lloyd's of London (Lloyds). We reverse and remand for a new trial based on errors in the jury instructions that probably resulted in a miscarriage of justice.

¶2 Jury Instruction No. 1 described the issues in the case. Lloyds issued an insurance policy covering Hotel. On July 16, 2009, Hotel's premises were damaged by wind and hail as a result of storms that crossed Oklahoma. Hotel claimed Lloyds violated its duty of good faith and fair dealing by (a) denying portions of the claim without a reasonable basis; (b) inadequately investigating the claim; (c) unreasonably delaying investigation and/or payment of the claim; (d) unreasonably withholding pertinent information from Hotel; (e) taking advantage of Hotel's vulnerable position after the storm; (f) conditioning payment of undisputed portions of the claim on settlement of disputed portions; (g) engaging Rimkus Engineering to inspect the damage to Hotel; (h) ignoring the law in investigating and paying the claim; (i) failing to take reasonable steps to prevent further damage to the property while it investigated the claim; and (j) issuing a notice of cancellation.

¶3 The jury instruction advised that Lloyds denied Hotel's claims. Lloyds claimed that it promptly investigated Hotel's claim and paid all amounts due under the policy. It claimed that delays in the investigation were caused by Hotel and Hotel's

failure to cooperate. Lloyds also claimed that it relied on the findings of Rimkus Engineering that much of the damage to the roofs and interior of the buildings was from pre-existing conditions including age and the lack of proper maintenance. Lloyds claimed that the insured premises was a gutted, vacant building, with no immediate plans for future development, and Hotel's claim for lost profits was speculative and unproven.

¶4 The jury returned a verdict in favor of Hotel and against Lloyds. It awarded damages of $1,629,300.00 for loss related to restoration cost and water remediation. It awarded damages of $10,000,000.00 as a result of "not being able to develop the property." The jury found Lloyds recklessly disregarded and intentionally and with malice breached its duty to deal fairly and act in good faith with its insured. Following additional evidence in the second stage of trial, the jury awarded Hotel punitive damages of $7,023,000.00. The trial court subsequently awarded prejudgment interest in the amount of $935,514.23, and applied an offset of $100,000.00 based on the parties' stipulation. It then entered judgment on the jury verdict in the total amount of $19,487,814.23.

¶5 Lloyds appealed from this judgment, and Hotel counter-appealed. Lloyds' brief in chief enumerates sixteen contentions of error. Because we reverse and remand for a new trial based on errors in the jury instructions, we need not decide the remaining contentions.[1]

I.

Standard of Review

¶6 In reviewing jury instructions on appeal, we must consider the instructions as a whole. *Dutsch v. Sea Ray Boats, Inc.*, 1992 OK 155, ¶7, 845 P.2d 187, 189. The instructions need not be ideal but must reflect Oklahoma law regarding the subject at issue. *Id.* The test for error in instructions is whether the jurors were probably misled regarding the legal standards they should

---

1. In particular, we do not decide the contentions of error numbered 3, 6, 12, 13, 14, 15, and 16 on pages 2 through 5 of Lloyds' brief in chief. Therefore, this opinion does not establish any

settled law of the case as to those issues. *Iglehart v. Board of County Com'rs of Rogers County*, 2002 OK 76, ¶16 n. 34, 60 P.3d 497.

apply to the evidence. *Id.* We will not reverse a judgment based on misdirection of the jury unless we conclude that the error probably resulted in a miscarriage of justice. 20 O.S.2011 § 3001.1.

## II.

### Jury Instruction No. 12

¶ 7 Lloyds contends that the trial court gave erroneous instructions that prejudiced its defense and misled the jury. We agree. Jury Instruction No. 12 provided:

### WAIVER OF CONDITION

Lloyd's issued the policy without reservation and had the opportunity to know of the condition of the complex including the roofs. You are instructed that Lloyd's cannot avoid or limit payment by suggesting the roof was in poor condition.

This instruction did not correctly state the law, and it probably affected the jury's verdict to the degree that Lloyds did not have a fair trial.

¶ 8 The insured premises was the former Lincoln Plaza Hotel in Oklahoma City. Before issuing a policy, Lloyds retained an inspector to view the property and report his findings. Lloyds used the report to help it decide whether to accept the risk and write the policy, or to decline Hotel's application. Lloyds chose to issue the policy.

¶ 9 After the property sustained storm damages, Lloyds retained Rimkus Engineering to inspect the buildings and report what part of the loss was caused by wind, hail, or other causes. Rimkus found the loss to the roofs was partially caused by wind and substantially caused by non-covered conditions that pre-existed the policy period such as age and inadequate maintenance. Based on the Rimkus report, Lloyds paid Hotel an amount substantially less than the cost of replacing the roofs.[2]

¶ 10 Hotel argues in its brief, "Lloyds inspected the property, knew its condition, insured the roofs, and could not avoid payment *for the covered loss of storm damage,* based on any roof's pre-loss condition." (Emphasis in original.) Jury Instruction No. 12 is broader than Hotel's argument. The instruction communicates that Lloyds had the opportunity to inspect the roofs, it chose to insure them without reservation, and it thereby waived the right to limit the amount of its payment based on the roofs' condition.

¶ 11 When a person applies for insurance, the potential insurer may ask to inspect the property as part of its process of evaluating the risk. Accepting the risk proposed in Hotel's application meant Lloyds agreed to write the policy. The resulting Building and Personal Property Coverage Form was a contract whereby Hotel agreed to pay a premium and Lloyds agreed to pay for damage to the insured premises caused by any covered loss commencing during the policy period.[3] Naturally, the terms of the policy defined what would constitute a covered loss. Under Oklahoma law, the foremost principle governing insurance coverage disputes is that the insurance policy is a contract. *American Economy Ins. Co. v. Bogdahn,* 2004 OK 9, ¶ 8, 89 P.3d 1051, 1054. The parties are free to contract to cover such risks as they see fit and will be bound by the terms of the contract. *Id.*

¶ 12 Lloyds' initial inspection might have played a role in its decision to accept the risk, but it did not preclude Lloyds from later raising the policy defense that a portion of Hotel's loss was caused by something not covered by the policy. Stated another way, Lloyds' agreement to insure the risk did not, by operation of law, constitute an agreement to provide coverage for that risk without any limitations. Jury Instruction No. 12, however, conveyed to the jury that Lloyds waived the condition of the roofs when it issued the policy, and as a consequence, could not limit its payment under the policy.

---

2. The evidence was conflicting on whether the policy provided for replacement cost or actual cash value.

3. The policy described and defined eleven covered causes of loss: Fire, Lightning, Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicles, Riot or Civil Commotion, Vandalism, Sprinkler Leakage, Sinkhole Collapse, and Volcanic Action.

¶ 13 The reasonableness of Lloyds' decision to limit payment based on the condition of the roofs was a proper question for the jury. But Instruction No. 12 eliminated that fact question. It told the jury, *as a matter of law,* that Lloyds "cannot.... limit payment" based on the condition of the roofs. The instruction is not supported by law.

¶ 14 Hotel cites *Great Northern Life Ins. Co. v. Cole,* 1952 OK 308, 207 Okla. 171, 248 P.2d 608, 610–611, and *Springfield Fire & Marine Ins. Co. v. First Nat'l Bank of Taloga,* 1917 OK 574, 70 Okla. 47, 172 P. 652, 653–54. These two cases stand for the proposition that an insurer cannot be relieved from its obligation when it seeks forfeiture based on circumstances it knew existed when it issued the policy. In *Great Northern,* the insurer issued a policy agreeing to pay benefits resulting from the accidental death of James Cole. The insurer knew when it prepared the policy that Cole was an automobile machinist. It also knew its policy contained an exclusion precluding coverage for any person employed as an automobile machinist. The insurer was not permitted to deny coverage based on its exclusion when it had full knowledge when it accepted the risk that coverage could be barred. *Great Northern,* 1952 OK 308, ¶ 14, 248 P.2d 608. *Great Northern* relied on the decision in *Springfield Fire.*

¶ 15 In *Springfield Fire,* an insurance company provided property insurance to an individual whom it knew had transferred ownership to another. When a claim was presented, the insurer argued the policy was void because the insured had no ownership interest. The Supreme Court quoted from a similar case decided in another state: "We think the rule is well settled that where an insurance company ... issues a policy with full knowledge of existing facts, which by its terms would work a forfeiture of the policy, the insurer must be held to have waived all such conditions, at least to the extent of its knowledge, actual or constructive. It cannot be permitted to knowingly issue a worthless policy upon a valuable consideration." *Springfield Fire,* 1917 OK 574, ¶ 8, 172 P. 652.

¶ 16 In *Great Northern* and *Springfield Fire,* the insurer accepted a premium knowing that the terms of its policy, if enforced, could result in a complete forfeiture of coverage. Neither case supports a conclusion that a casualty insurer, by accepting a risk, must pay for a loss that was in existence at the time it issued the policy. Lloyds did not, as a matter of law, agree to pay damages that were in existence before it issued the policy merely because it had the opportunity to know the condition of the insured premises.

¶ 17 Hotel also cites *Bowman v. Presley,* 2009 OK 48, 212 P.3d 1210, but does not explain how it applies. *Bowman* arose from a contract to sell a home. The buyer alleged the seller fraudulently misrepresented the square footage of the home. The seller argued, unsuccessfully, that because the buyer had the right to inspect the home, the doctrine of caveat emptor applied to bar the buyer's claim. To the extent that Hotel may be arguing that caveat emptor bars Lloyd's defense based on its inspection of the insured property, we reject the contention.

¶ 18 We are mindful of the rule that if the appellant can point to no prejudice arising from erroneous instructions, the appellate court will not disturb the judgment. *Juvenal v. Okeene Public Schools,* 1994 OK 83, ¶ 25, 878 P.2d 1026, 1031. If competent evidence supports the verdict, we will not disturb it because of erroneous instructions unless it appears reasonably certain that the jury was misled. *Id.* at ¶ 13. We find these common law standards have been met as well as the statutory standard that the instruction probably resulted in a miscarriage of justice. 20 O.S.2011 § 3001.1.

¶ 19 The evidence shows Lloyds obtained an estimate for the cost to replace the roofs and it totaled approximately $602,000.00. This constituted replacement cost without any reduction for non-covered losses. A witness for Lloyds testified this figure was a starting point in the determination of what it would owe for covered losses. Rimkus Engineering inspected the roofs and reported its opinion of what damages were caused by the storm and what damages were not caused by the storm. Lloyds compared its engineer's report to the roofing estimate and concluded

that the portion of Hotel's damages which was covered under the policy was $78,011.82. This was a replacement cost value and so Lloyds deducted depreciation in the amount of $17,315.24. Lloyds then applied Hotel's $10,000.00 deductible and calculated the covered loss to the roofs to be $50,696.58.

¶ 20 During closing argument, Hotel's attorney summarized Jury Instruction No. 12. He told the jury that the judge had instructed them that they were not supposed to consider the condition of the roofs, the part of the damages which was "uncovered." Hotel's counsel argued to the jury that the roofing estimate was $602,000.00 for replacement cost, but that Lloyds paid only $50,000.00. He characterized this as an intentional reduction and bad faith. The jury awarded consequential damages in the amount of $1,629,300.00 for loss related to restoration cost and water remediation.[4] It therefore appears likely that the jury awarded damages commensurate with the full replacement cost of the roofs.[5]

¶ 21 The jury rejected Lloyds' argument that it was not obligated to pay for the condition of the roofs which pre-existed the storm. Hotel's closing argument suggests it was led to this conclusion by the erroneous Jury Instruction No. 12. We hold that

4. Hotel's water remediation estimate totaled $1,115,110.32. When this figure is added to the full replacement cost of the roofs, $602,000.00, the sum is $1,717,110.32. Deducting Lloyd's total payments of $87,832.61 results in a difference of $1,629,277.71.

5. We note that Jury Instruction No. 9 correctly advised the jury that in fixing the damages it should consider the amount of money required "to restore the complex to its condition on the day before the loss." However, because of the damages awarded, the verdict appears to be based upon the incorrect Jury Instruction No. 12.

6. OUJI 3d No. 22.2 provides:
[Plaintiff] claims that [the Insurer] violated its duty of good faith and fair dealing by unreasonably, and in bad faith, refusing to pay [Plaintiff] the proper amount for a valid claim under the insurance policy. In order for [Plaintiff] to recover damages in this case, [he/she] must show by the greater weight of the evidence that:
1. [The Insurer] was required under the insurance policy to pay [Plaintiff's] claim;

Lloyds' defense, that it paid what it owed under the policy, was so undermined by the "waiver of condition" instruction that it probably caused a miscarriage of justice.

## III.

### Jury Instruction No. 8

¶ 22 Jury Instruction No. 8, entitled "Bad Faith–Failure To Pay Claim of Insured," was based on OUJI No. 22.2,[6] with substantial modification to subparagraph (2), that the insurer's refusal to pay the claim in full was unreasonable under the circumstances. The uniform instruction provides for modification of subparagraph (2), giving examples of factual bases supporting unreasonableness. The Notes on Use state that, "Besides the examples given in subparagraph (2) above, there may be other factual bases supporting a finding that an insurer's refusal to pay a claim was unreasonable, and the instruction should be modified to reflect whatever is supported by the evidence."

¶ 23 Any modification to a jury instruction must accurately state the law and be simple, brief, impartial, and free from argument. 12 O.S.2011 § 577.2. Jury Instruction No. 8 fails to meet this standard.[7]

2. [The Insurer's] refusal to pay the claim in full was unreasonable under the circumstances, because [for example, that 1) it did not perform a proper investigation, 2) it did not evaluate the results of the investigation properly, 3) it had no reasonable basis for the refusal, or 4) the amount it offered to satisfy the claim was unreasonably low];
3. [The Insurer] did not deal fairly and in good faith with [Plaintiff]; and
4. The violation by [the Insurer] of its duty of good faith and fair dealing was the direct cause of the injury sustained by [Plaintiff].

7. Jury Instruction No. 8 stated:
Lincoln Plaza claims Lloyd's of London violated its duty of good faith and fair dealing through a number of acts. In order for Lincoln Plaza to recover damages for this claim it must show by the greater weight of the evidence that:
1. Lloyd's was required under the insurance policy to pay Lincoln Plaza's claim;
2. Lloyd's refusal to pay the claim in full was unreasonable under the circumstances, because of at least one of the following: (a) denying portions of the claim without a reasonable basis; (b) inadequately investigating the claim; (c) unreasonably delaying investiga-

Clauses (a) through (d) of Subsection (2) are appropriately neutral. Clauses (e) and (h) are biased and argumentative. Clause (f) is adequately covered by clause (c). Clause (h) is adequately covered by clauses (b) and (c). Clauses (g) and (j) misstate the law because those actions cannot be said to be categorically unreasonable. For example, hiring an engineer to inspect damages is not necessarily unreasonable under the law. Clause (i) misstates the law by placing the entire duty to mitigate damages upon Lloyds, while the parties' contract, in Section (E)(3)(a)(4) of the Building and Personal Property Coverage Form, places the duty on Hotel to "take all reasonable steps to protect the Covered Property from further damage." This error was prejudicial to Lloyds' defense,[8] and materially misled the jury.

## IV.

### Jury Instruction No. 14

¶ 24 Jury Instruction No. 14,[9] entitled, "Unfair Claims Settlement Practices Act—Standard of Care" is contrary to law

> tion and/or payment of the claim; (d) unreasonably withholding pertinent information from Lincoln Plaza; (e) taking advantage of Lincoln Plaza's vulnerable position after the storm; (f) conditioning payment of undisputed portions of the claim on settlement of disputed portions; (g) engaging Rimkus Engineering to inspect the damage to Lincoln Plaza; (h) ignoring the law in investigating and paying the claim; (i) failing to take reasonable steps to prevent further damage to the property while it investigated the claim; and (j) issuing a notice of cancellation.
> 3. Lloyd's did not deal fairly and in good faith with Lincoln Plaza; and
> 4. The violation of Lloyd's of its duty of good faith and fair dealing was the direct cause of the injury sustained by Lincoln Plaza.

8. In addition, the trial court's error on this point of law caused it to erroneously grant a "directed verdict" on the issue, prohibiting Lloyds from arguing that Hotel had a duty to mitigate. This error further prejudiced Lloyds' defense.

9. Jury Instruction No. 14 stated:

> The State of Oklahoma has enacted statutes, which prohibit insurers from engaging in certain practices. The standard of conduct with which insurers are expected to comply (sic). Under Oklahoma law, the following acts constitute unfair claims settlement practices:

and prejudicial. The Unfair Claims Settlement Practices Act (Act), 36 O.S.2011 §§ 1250.1–1250.17, does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing. The Act was designed to provide the Insurance Commissioner with power to regulate the insurance industry by issuing "cease and desist" orders or by revoking or suspending an insurance company's license to do business in Oklahoma. *Walker v. Chouteau Lime Co.,* 1993 OK 35, ¶ 7, 849 P.2d 1085, 1087. The Act does not create a private remedy. *Id.*

¶ 25 Furthermore, the actions set forth in Instruction No. 14 do not, without more, constitute unfair claim settlement practices under the Act. In order to be an unfair practice, the breach must be committed (1) flagrantly and in conscious disregard of the Act, or (2) with such frequency as to constitute a business practice. § 1250.5 and § 1250.3. This statutory condition was not included in Instruction No. 14.

¶ 26 Hotel argues that Instruction No. 14 permissibly advised the jury that

> Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverage at issue;
> Failing to adopt and implement reasonable standards for prompt investigations of claims arising under its insurance policies or insurance contracts;
> Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
> Requesting a claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment;
> Issuing checks or drafts in partial settlement of a loss or claim under a specified coverage which contain language releasing an insurer or its insured from its total liability;
> Compelling, without just cause, policyholders to institute suits to recover amounts due under its insurance policies or insurance contracts by offering substantially less than the amounts ultimately recovered in suits brought by them, when the policyholders have made claims for amounts reasonably similar to the amounts ultimately recovered;
> If you find that Lloyds engaged in conduct constituting an unfair claim settlement practice as set forth above, you are entitled to consider such violation, together with all other facts and circumstances in evidence, when determining whether or not Lloyds breached its duty of good faith and fair dealing to Lincoln Plaza.

it could *consider* the prescribed violations, together with all other facts and circumstances in evidence, in determining bad faith. Hotel relies on *Beers v. Hillory*, 2010 OK CIV APP 99, 241 P.3d 285. "[T]he UCSPA can provide the district court with guidance in determining whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for bad faith:" *Beers*, 2010 OK CIV APP 99, ¶ 30, 241 P.3d 285. The *Beers* quotation was in the context of a district court's consideration of a motion for summary judgment. When a trial court concludes as a matter of law that an insurer acted reasonably concerning a legitimate dispute over coverage, summary judgment may be granted against the insured on the insured's claim of bad faith. *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223. The Unfair Claims Settlement Practices Act may provide guidance to a trial court in determining whether to grant summary judgment, but it does not function as an appropriate guide for a jury to determine bad faith.

## V.

### Jury Instruction No. 7

 ¶ 27 The trial court should have given OUJI No. 22.1 [10] instead of Instruction No. 7.[11] Title 12 O.S.2011 § 577.2 [12] directs that use of the Oklahoma Uniform Jury Instructions (OUJI) is mandatory when the trial court determines that the jury should be instructed on a subject for which OUJI provides an applicable instruction, unless the

---

10. OUJI 3d No. 22.1 provides:
An insurance company has a duty to deal fairly and act in good faith with its insureds.

11. Jury Instruction No. 7 stated:
Oklahoma law provides that an insurer like Lloyd's has a duty to deal fairly and act in good faith with its insured. Further, the law presumes an insurer like Lloyd's knows the applicable law, and the reasonableness of its decisions must be judged in light of that law.
The special relationship between the insurer and its insured gives rise to the duty of good faith and fair dealing, especially in light of the unequal bargaining power of the parties. Of particular importance is the position of the insured after a loss is incurred, since the very risks insured against presuppose that if and when a claim is made, the insured will be disabled and, there-

court determines that it does not accurately state the law. Any non-OUJI instructions must be simple, brief, impartial and free from argument. *Id.* Uniform Instruction 22.1 describes the duty of good faith in language that is simple, brief, impartial and free from argument. The first sentence of Instruction No. 7 was consistent with OUJI No. 22.1. But the trial court modified the uniform instruction by adding three sentences that suggested to the jury that (1) Lloyds should have known the law, (2) Lloyds had superior bargaining power, (3) Lloyds was economically powerful, and (4) Hotel was disabled and vulnerable after the loss. The additional language of Instruction No. 7 violated § 577.2 because it was neither impartial nor free from argument.

## VI.

### Jury Instruction No. 9

 ¶ 28 Instruction No. 9 was a modified version of OUJI No. 22.4 governing the measure of damages for insurance bad faith cases. The instruction is correct because it followed 23 O.S.2011 § 61, which provides, "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." This section sets forth the measure of damages for a tort claim, including breach of the duty of good faith and fair dealing. For such a claim, loss of future

---

fore, particularly vulnerable to an economically powerful entity.

12. 12 O.S.2011 § 577.2 provides in relevant part:
Whenever Oklahoma Uniform Jury Instructions (OUJI) contains an instruction applicable in a civil case or a criminal case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the OUJI instructions shall be used unless the court determines that it does not accurately state the law. Whenever OUJI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial and free from argument.

income or profits is a proper element of damages.

¶ 29 The case law that Lloyds cites for the proposition that anticipated profits are too speculative and uncertain to be recoverable is based on 23 O.S.2011 § 21, which provides the measure of damages for breach of contract:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.

Hotel dismissed its breach of contract claim at trial, and therefore its recovery is not limited to "clearly ascertainable" damages. Rather, it may recover that "amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." Jury Instruction No. 9 was correct. The trial court did not err in permitting the jury to consider, as an element of damage, the amount of money Hotel lost as a result of not being able to develop the property. The loss of profit was supported by competent evidence.

¶ 30 Because of the errors in Jury Instructions 7, 8, 12, and 14, and the directed verdict as to mitigation of damages, this case must be remanded for a new trial.

### VII.

#### Counter–Appeal

¶ 31 Hotel's counter-appeal claims error in the trial court's discovery rulings regarding discovery of communications between Lloyds and its counsel, George Dahnke. Hotel does not identify where in the record the trial court made an erroneous ruling.[13] Neither does the record contain the

---

13. In its renewed motion to compel, filed August 16, 2012, Hotel argues Lloyds waived the attorney-client privilege as to all communications with Mr. Dahnke on the subject of the actual cash value of the insured premises as it relates to

documents which the trial court apparently reviewed and ruled on following an in camera review. We will not review questions not presented to and passed upon by the trial court. *Von Stilli v. Young*, 1950 OK 137, 203 Okla. 86, 219 P.2d 224, 228. Nor will we review a question that is not properly preserved by an adequate record. *Hamid v. Sew Original*, 1982 OK 46, ¶ 7, 645 P.2d 496, 497.

¶ 32 For the foregoing reasons, the trial court's judgment is REVERSED and this matter is REMANDED for a new trial.

HETHERINGTON, V.C.J. (sitting by designation), and BUETTNER, J. (sitting by designation), concur.

the propriety of a co-insurance penalty. The counter-appeal does not identify where in the record this motion was determined by the trial court.