OSCN Found Document:ADUDDELL LINCOLN PLAZA HOTEL v. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 ADUDDELL LINCOLN PLAZA HOTEL v. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON
2015 OK CIV APP 34
348 P.3d 216
Case Number: 111651; Comp. w/112176
Decided: 10/06/2014
Mandate Issued: 04/15/2015
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2015 OK CIV APP 34, 348 P.3d 216

 

ADUDDELL LINCOLN PLAZA HOTEL d/b/a RENAISSANCE CENTER, L.L.C., 
an Oklahoma Limited Liability Company, 
Plaintiff/Appellee/Counter-Appellant,
v.
CERTAIN UNDERWRITERS AT LLOYD'S 
OF LONDON, Defendant/Appellant/Counter-Appellee,
and
Insurance 
Professionals II, an Oklahoma Corporation, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, 
OKLAHOMA
HONORABLE BARBARA G. SWINTON, TRIAL JUDGE

REVERSED AND REMANDED

Susan B. Loving, Shannon Forth Davies, George S. Freedman, Courtney D. 
Powell, LESTER, LOVING AND DAVIES, P.C., Edmond, Oklahoma, for 
Plaintiff/Appellee/Counter-Appellant,
Ronald L. Walker, George D. Davis, 
TOMLINSON, RUST, McKINSTRY, GRABLE, Oklahoma City, Oklahoma, for 
Defendant/Appellant/Counter-Appellee.


BRIAN JACK GOREE, Acting Presiding Judge:
¶1 This appeal and counter-appeal arise from the trial court's judgment based 
on a jury verdict in favor of Plaintiff/Appellee/Counter-Appellant, Aduddell 
Lincoln Plaza Hotel d/b/a Renaissance Center, L.L.C. (Hotel), on its insurance 
bad faith claim against Defendant/Appellant/Counter-Appellee, Certain 
Underwriters of Lloyd's of London (Lloyds). We reverse and remand for a new 
trial based on errors in the jury instructions that probably resulted in a 
miscarriage of justice.
¶2 Jury Instruction No. 1 described the issues in the case. Lloyds issued an 
insurance policy covering Hotel. On July 16, 2009, Hotel's premises were damaged 
by wind and hail as a result of storms that crossed Oklahoma. Hotel claimed 
Lloyds violated its duty of good faith and fair dealing by (a) denying portions 
of the claim without a reasonable basis; (b) inadequately investigating the 
claim; (c) unreasonably delaying investigation and/or payment of the claim; (d) 
unreasonably withholding pertinent information from Hotel; (e) taking advantage 
of Hotel's vulnerable position after the storm; (f) conditioning payment of 
undisputed portions of the claim on settlement of disputed portions; (g) 
engaging Rimkus Engineering to inspect the damage to Hotel; (h) ignoring the law 
in investigating and paying the claim; (i) failing to take reasonable steps to 
prevent further damage to the property while it investigated the claim; and (j) 
issuing a notice of cancellation.
¶3 The jury instruction advised that Lloyds denied Hotel's claims. Lloyds 
claimed that it promptly investigated Hotel's claim and paid all amounts due 
under the policy. It claimed that delays in the investigation were caused by 
Hotel and Hotel's failure to cooperate. Lloyds also claimed that it relied on 
the findings of Rimkus Engineering that much of the damage to the roofs and 
interior of the buildings was from pre-existing conditions including age and the 
lack of proper maintenance. Lloyds claimed that the insured premises was a 
gutted, vacant building, with no immediate plans for future development, and 
Hotel's claim for lost profits was speculative and unproven.
¶4 The jury returned a verdict in favor of Hotel and against Lloyds. It 
awarded damages of $1,629,300.00 for loss related to restoration cost and water 
remediation. It awarded damages of $10,000,000.00 as a result of "not being able 
to develop the property." The jury found Lloyds recklessly disregarded and 
intentionally and with malice breached its duty to deal fairly and act in good 
faith with its insured. Following additional evidence in the second stage of 
trial, the jury awarded Hotel punitive damages of $7,023,000.00. The trial court 
subsequently awarded prejudgment interest in the amount of $935,514.23, and 
applied an offset of $100,000.00 based on the parties' stipulation. It then 
entered judgment on the jury verdict in the total amount of $19,487,814.23.
¶5 Lloyds appealed from this judgment, and Hotel counter-appealed. Lloyds' 
brief in chief enumerates sixteen contentions of error. Because we reverse and 
remand for a new trial based on errors in the jury instructions, we need not 
decide the remaining contentions.[1]
I.
Standard of Review
¶6 In reviewing jury instructions on appeal, we must consider the 
instructions as a whole. Dutsch v. Sea Ray Boats, Inc., 1992 OK 155, ¶7, 845 P.2d 187, 189. The instructions 
need not be ideal but must reflect Oklahoma law regarding the subject at issue. 
Id. The test for error in instructions is whether the jurors were 
probably misled regarding the legal standards they should apply to the evidence. 
Id. We will not reverse a judgment based on misdirection of the jury 
unless we conclude that the error probably resulted in a miscarriage of justice. 
20 O.S. 2011 §3001.1.
II.
Jury Instruction No. 12
¶7 Lloyds contends that the trial court gave erroneous instructions that 
prejudiced its defense and misled the jury. We agree. Jury Instruction No. 12 
provided:
WAIVER OF CONDITION

 
 Lloyd's issued the policy without reservation and had the opportunity to 
 know of the condition of the complex including the roofs. You are instructed 
 that Lloyd's cannot avoid or limit payment by suggesting the roof was in 
 poor condition.
This instruction did not correctly state the law, and it probably affected 
the jury's verdict to the degree that Lloyds did not have a fair trial.
¶8 The insured premises was the former Lincoln Plaza Hotel in Oklahoma City. 
Before issuing a policy, Lloyds retained an inspector to view the property and 
report his findings. Lloyds used the report to help it decide whether to accept 
the risk and write the policy, or to decline Hotel's application. Lloyds chose 
to issue the policy.
¶9 After the property sustained storm damages, Lloyds retained Rimkus 
Engineering to inspect the buildings and report what part of the loss was caused 
by wind, hail, or other causes. Rimkus found the loss to the roofs was partially 
caused by wind and substantially caused by non-covered conditions that 
pre-existed the policy period such as age and inadequate maintenance. Based on 
the Rimkus report, Lloyds paid Hotel an amount substantially less than the cost 
of replacing the roofs.[2]
¶10 Hotel argues in its brief, "Lloyds inspected the property, knew its 
condition, insured the roofs, and could not avoid payment for the covered 
loss of storm damage, based on any roof's pre-loss condition." (Emphasis in 
original.) Jury Instruction No. 12 is broader than Hotel's argument. The 
instruction communicates that Lloyds had the opportunity to inspect the roofs, 
it chose to insure them without reservation, and it thereby waived the right to 
limit the amount of its payment based on the roofs' condition.
¶11 When a person applies for insurance, the potential insurer may ask to 
inspect the property as part of its process of evaluating the risk. Accepting 
the risk proposed in Hotel's application meant Lloyds agreed to write the 
policy. The resulting Building and Personal Property Coverage Form was a 
contract whereby Hotel agreed to pay a premium and Lloyds agreed to pay for 
damage to the insured premises caused by any covered loss commencing during the 
policy period.[3] Naturally, the terms of the policy defined what 
would constitute a covered loss. Under Oklahoma law, the foremost principle 
governing insurance coverage disputes is that the insurance policy is a 
contract. American Economy Ins. Co. v. Bogdahn, 2004 OK 9, ¶8, 89 P.3d 1051, 1054. The parties are 
free to contract to cover such risks as they see fit and will be bound by the 
terms of the contract. Id.
¶12 Lloyds' initial inspection might have played a role in its decision to 
accept the risk, but it did not preclude Lloyds from later raising the policy 
defense that a portion of Hotel's loss was caused by something not covered by 
the policy. Stated another way, Lloyds' agreement to insure the risk did not, by 
operation of law, constitute an agreement to provide coverage for that risk 
without any limitations. Jury Instruction No. 12, however, conveyed to the jury 
that Lloyds waived the condition of the roofs when it issued the policy, and as 
a consequence, could not limit its payment under the policy.
¶13 The reasonableness of Lloyds' decision to limit payment based on the 
condition of the roofs was a proper question for the jury. But Instruction No. 
12 eliminated that fact question. It told the jury, as a matter of law, 
that Lloyds "cannot .... limit payment" based on the condition of the roofs. The 
instruction is not supported by law.
¶14 Hotel cites Great Northern Life Ins. Co. v. Cole, 1952 OK 308, 248 P.2d 608, 610-611, and 
Springfield Fire & Marine Ins. Co. v. First Nat'l Bank of Taloga, 1917 OK 574, 172 P.652, 653-54. 
These two cases stand for the proposition that an insurer cannot be relieved 
from its obligation when it seeks forfeiture based on circumstances it knew 
existed when it issued the policy. In Great Northern, the insurer issued 
a policy agreeing to pay benefits resulting from the accidental death of James 
Cole. The insurer knew when it prepared the policy that Cole was an automobile 
machinist. It also knew its policy contained an exclusion precluding coverage 
for any person employed as an automobile machinist. The insurer was not 
permitted to deny coverage based on its exclusion when it had full knowledge 
when it accepted the risk that coverage could be barred. Great Northern, 
1952 OK 308, ¶14. Great 
Northern relied on the decision in Springfield Fire.
¶15 In Springfield Fire, an insurance company provided property 
insurance to an individual whom it knew had transferred ownership to another. 
When a claim was presented, the insurer argued the policy was void because the 
insured had no ownership interest. The Supreme Court quoted from a similar case 
decided in another state: "We think the rule is well settled that where an 
insurance company . . . issues a policy with full knowledge of existing facts, 
which by its terms would work a forfeiture of the policy, the insurer must be 
held to have waived all such conditions, at least to the extent of its 
knowledge, actual or constructive. It cannot be permitted to knowingly issue a 
worthless policy upon a valuable consideration." Springfield Fire, 1917 OK 574, ¶8.
¶16 In Great Northern and Springfield Fire, the insurer 
accepted a premium knowing that the terms of its policy, if enforced, could 
result in a complete forfeiture of coverage. Neither case supports a conclusion 
that a casualty insurer, by accepting a risk, must pay for a loss that was in 
existence at the time it issued the policy. Lloyds did not, as a matter of law, 
agree to pay damages that were in existence before it issued the policy merely 
because it had the opportunity to know the condition of the insured 
premises.
¶17 Hotel also cites Bowman v. Presley, 2009 OK 48, 212 P.3d 1210, but does not explain 
how it applies. Bowman arose from a contract to sell a home. The buyer 
alleged the seller fraudulently misrepresented the square footage of the home. 
The seller argued, unsuccessfully, that because the buyer had the right to 
inspect the home, the doctrine of caveat emptor applied to bar the buyer's 
claim. To the extent that Hotel may be arguing that caveat emptor bars Lloyd's 
defense based on its inspection of the insured property, we reject the 
contention.
¶18 We are mindful of the rule that if the appellant can point to no 
prejudice arising from erroneous instructions, the appellate court will not 
disturb the judgment. Juvenal v. Okeene Public Schools, 1994 OK 83, ¶25, 878 P.2d 1026, 1031. If competent 
evidence supports the verdict, we will not disturb it because of erroneous 
instructions unless it appears reasonably certain that the jury was misled. 
Id. at ¶13. We find these common law standards have been met as well as 
the statutory standard that the instruction probably resulted in a miscarriage 
of justice. 20 O.S. 2011 
§3001.1.
¶19 The evidence shows Lloyds obtained an estimate for the cost to replace 
the roofs and it totaled approximately $602,000.00. This constituted replacement 
cost without any reduction for non-covered losses. A witness for Lloyds 
testified this figure was a starting point in the determination of what it would 
owe for covered losses. Rimkus Engineering inspected the roofs and reported its 
opinion of what damages were caused by the storm and what damages were not 
caused by the storm. Lloyds compared its engineer's report to the roofing 
estimate and concluded that the portion of Hotel's damages which was covered 
under the policy was $78,011.82. This was a replacement cost value and so Lloyds 
deducted depreciation in the amount of $17,315.24. Lloyds then applied Hotel's 
$10,000.00 deductible and calculated the covered loss to the roofs to be 
$50,696.58.
¶20 During closing argument, Hotel's attorney summarized Jury Instruction No. 
12. He told the jury that the judge had instructed them that they were not 
supposed to consider the condition of the roofs, the part of the damages which 
was "uncovered." Hotel's counsel argued to the jury that the roofing estimate 
was $602,000.00 for replacement cost, but that Lloyds paid only $50,000.00. He 
characterized this as an intentional reduction and bad faith. The jury awarded 
consequential damages in the amount of $1,629,300.00 for loss related to 
restoration cost and water remediation.[4] It therefore appears likely that the jury awarded 
damages commensurate with the full replacement cost of the roofs.[5]
¶21 The jury rejected Lloyds' argument that it was not obligated to pay for 
the condition of the roofs which pre-existed the storm. Hotel's closing argument 
suggests it was led to this conclusion by the erroneous Jury Instruction No. 12. 
We hold that Lloyds' defense, that it paid what it owed under the policy, was so 
undermined by the "waiver of condition" instruction that it probably caused a 
miscarriage of justice.
III.
Jury Instruction No. 8
¶22 Jury Instruction No. 8, entitled "Bad Faith - Failure To Pay Claim of 
Insured," was based on OUJI No. 22.2,[6] with substantial modification to subparagraph (2), 
that the insurer's refusal to pay the claim in full was unreasonable under the 
circumstances. The uniform instruction provides for modification of subparagraph 
(2), giving examples of factual bases supporting unreasonableness. The Notes on 
Use state that, "Besides the examples given in subparagraph (2) above, there may 
be other factual bases supporting a finding that an insurer's refusal to pay a 
claim was unreasonable, and the instruction should be modified to reflect 
whatever is supported by the evidence."
¶23 Any modification to a jury instruction must accurately state the law and 
be simple, brief, impartial, and free from argument. 12 O.S. 2011 §577.2. Jury 
Instruction No. 8 fails to meet this standard.[7] Clauses (a) through (d) of Subsection 
(2) are appropriately neutral. Clauses (e) and (h) are biased and argumentative. 
Clause (f) is adequately covered by clause (c). Clause (h) is adequately covered 
by clauses (b) and (c). Clauses (g) and (j) misstate the law because those 
actions cannot be said to be categorically unreasonable. For example, hiring an 
engineer to inspect damages is not necessarily unreasonable under the law. 
Clause (i) misstates the law by placing the entire duty to mitigate damages upon 
Lloyds, while the parties' contract, in Section (E)(3)(a)(4) of the Building and 
Personal Property Coverage Form, places the duty on Hotel to "take all 
reasonable steps to protect the Covered Property from further damage." This 
error was prejudicial to Lloyds' defense,[8] and materially misled the jury.
IV.
Jury Instruction No. 14
¶24 Jury Instruction No. 14,[9] entitled, "Unfair Claims Settlement Practices Act - 
Standard of Care" is contrary to law and prejudicial. The Unfair Claims 
Settlement Practices Act (Act), 36 
O.S. 2011 §§1250.1-1250.17, does not establish standards of care or 
standards of conduct for measuring whether an insurer has violated its duty of 
good faith and fair dealing. The Act was designed to provide the Insurance 
Commissioner with power to regulate the insurance industry by issuing "cease and 
desist" orders or by revoking or suspending an insurance company's license to do 
business in Oklahoma. Walker v. Chouteau Lime Co., 1993 OK 35, ¶7, 849 P.2d 1085, 1087. The Act does 
not create a private remedy. Id.
¶25 Furthermore, the actions set forth in Instruction No. 14 do not, without 
more, constitute unfair claim settlement practices under the Act. In order to be 
an unfair practice, the breach must be committed (1) flagrantly and in conscious 
disregard of the Act, or (2) with such frequency as to constitute a business 
practice. §1250.5 and §1250.3. This statutory condition was not included in 
Instruction No. 14.
¶26 Hotel argues that Instruction No. 14 permissibly advised the jury that it 
could consider the prescribed violations, together with all other facts 
and circumstances in evidence, in determining bad faith. Hotel relies on 
Beers v. Hillory, 2010 OK CIV 
APP 99, 241 P.3d 285. "[T]he 
UCSPA can provide the district court with guidance in determining whether 
particular conduct on the part of an insurer is unreasonable and sufficient to 
constitute a basis for bad faith." Beers, 2010 OK CIV APP 99, ¶30. The 
Beers quotation was in the context of a district court's consideration of 
a motion for summary judgment. When a trial court concludes as a matter of law 
that an insurer acted reasonably concerning a legitimate dispute over coverage, 
summary judgment may be granted against the insured on the insured's claim of 
bad faith. Skinner v. John Deere Ins. Co., 2000 OK 18, ¶17, 998 P.2d 1219, 1223. The Unfair 
Claims Settlement Practices Act may provide guidance to a trial court in 
determining whether to grant summary judgment, but it does not function as an 
appropriate guide for a jury to determine bad faith.
V.
Jury Instruction No. 7
¶27 The trial court should have given OUJI No. 22.1[10] instead of Instruction No. 7.[11] Title 12 O.S. 2011 §577.2[12] directs that use of the 
Oklahoma Uniform Jury Instructions (OUJI) is mandatory when the trial court 
determines that the jury should be instructed on a subject for which OUJI 
provides an applicable instruction, unless the court determines that it does not 
accurately state the law. Any non-OUJI instructions must be simple, brief, 
impartial and free from argument. Id. Uniform Instruction 22.1 describes 
the duty of good faith in language that is simple, brief, impartial and free 
from argument. The first sentence of Instruction No. 7 was consistent with OUJI 
No. 22.1. But the trial court modified the uniform instruction by adding three 
sentences that suggested to the jury that (1) Lloyds should have known the law, 
(2) Lloyds had superior bargaining power, (3) Lloyds was economically powerful, 
and (4) Hotel was disabled and vulnerable after the loss. The additional 
language of Instruction No. 7 violated §577.2 because it was neither impartial 
nor free from argument.
VI.
Jury Instruction No. 9
¶28 Instruction No. 9 was a modified version of OUJI No. 22.4 governing the 
measure of damages for insurance bad faith cases. The instruction is correct 
because it followed 23 O.S. 2011 
§61, which provides, "For the breach of an obligation not arising from 
contract, the measure of damages, except where otherwise expressly provided by 
this chapter, is the amount which will compensate for all detriment proximately 
caused thereby, whether it could have been anticipated or not." This section 
sets forth the measure of damages for a tort claim, including breach of the duty 
of good faith and fair dealing. For such a claim, loss of future income or 
profits is a proper element of damages.
¶29 The case law that Lloyds cites for the proposition that anticipated 
profits are too speculative and uncertain to be recoverable is based on 23 O.S. 2011 §21, which provides the 
measure of damages for breach of contract:

 
 For the breach of an obligation arising from contract, the measure of 
 damages, except where otherwise expressly provided by this chapter, is the 
 amount which will compensate the party aggrieved for all the detriment 
 proximately caused thereby, or which, in the ordinary course of things, 
 would be likely to result therefrom. No damages can be recovered for a 
 breach of contract, which are not clearly ascertainable in both their nature 
 and origin.
Hotel dismissed its breach of contract claim at trial, and therefore its 
recovery is not limited to "clearly ascertainable" damages. Rather, it may 
recover that "amount which will compensate for all detriment proximately caused 
thereby, whether it could have been anticipated or not." Jury Instruction No. 9 
was correct. The trial court did not err in permitting the jury to consider, as 
an element of damage, the amount of money Hotel lost as a result of not being 
able to develop the property. The loss of profit was supported by competent 
evidence.
¶30 Because of the errors in Jury Instructions 7, 8, 12, and 14, and the 
directed verdict as to mitigation of damages, this case must be remanded for a 
new trial.
VII.
Counter-Appeal
¶31 Hotel's counter-appeal claims error in the trial court's discovery 
rulings regarding discovery of communications between Lloyds and its counsel, 
George Dahnke. Hotel does not identify where in the record the trial court made 
an erroneous ruling.[13] Neither does the record contain the documents 
which the trial court apparently reviewed and ruled on following an in camera 
review. We will not review questions not presented to and passed upon by the 
trial court. Von Stilli v. Young, 1950 OK 137, 219 P.2d 224, 228. Nor will we 
review a question that is not properly preserved by an adequate record. Hamid 
v. Sew Original, 1982 OK 46, 
¶7, 645 P.2d 496, 497.
¶32 For the foregoing reasons, the trial court's judgment is REVERSED and 
this matter is REMANDED for a new trial.

HETHERINGTON, V.C.J. (sitting by designation), and BUETTNER, J. (sitting by 
designation), concur.

FOOTNOTES

[1] In 
particular, we do not decide the contentions of error numbered 3, 6, 12, 13, 14, 
15, and 16 on pages 2 through 5 of Lloyds' brief in chief. Therefore, this 
opinion does not establish any settled law of the case as to those issues. 
Iglehart v. Board of County Com'rs of Rogers County, 2002 OK 76, ¶16 n.34, 60 P.3d 497.

[2] The 
evidence was conflicting on whether the policy provided for replacement cost or 
actual cash value.

[3] The 
policy described and defined eleven covered causes of loss: Fire, Lightning, 
Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicles, Riot or Civil 
Commotion, Vandalism, Sprinkler Leakage, Sinkhole Collapse, and Volcanic 
Action.

[4] Hotel's 
water remediation estimate totaled $1,115,110.32. When this figure is added to 
the full replacement cost of the roofs, $602,000.00, the sum is $1,717,110.32. 
Deducting Lloyd's total payments of $87,832.61 results in a difference of 
$1,629,277.71.

[5] We note 
that Jury Instruction No. 9 correctly advised the jury that in fixing the 
damages it should consider the amount of money required "to restore the complex 
to its condition on the day before the loss." However, because of the damages 
awarded, the verdict appears to be based upon the incorrect Jury Instruction No. 
12.

[6] OUJI 3d 
No. 22.2 provides:
[Plaintiff] claims that [the Insurer] violated its duty of good faith and 
fair dealing by unreasonably, and in bad faith, refusing to pay [Plaintiff] the 
proper amount for a valid claim under the insurance policy. In order for 
[Plaintiff] to recover damages in this case, [he/she] must show by the greater 
weight of the evidence that:
1. [The Insurer] was required under the insurance policy to pay [Plaintiff's] 
claim;
2. [The Insurer's] refusal to pay the claim in full was unreasonable under 
the circumstances, because [for example, that 1) it did not perform a proper 
investigation, 2) it did not evaluate the results of the investigation properly, 
3) it had no reasonable basis for the refusal, or 4) the amount it offered to 
satisfy the claim was unreasonably low];
3. [The Insurer] did not deal fairly and in good faith with [Plaintiff]; 
and
4. The violation by [the Insurer] of its duty of good faith and fair dealing 
was the direct cause of the injury sustained by [Plaintiff].

[7] Jury 
Instruction No. 8 stated:
Lincoln Plaza claims Lloyd's of London violated its duty of good faith and 
fair dealing through a number of acts. In order for Lincoln Plaza to recover 
damages for this claim it must show by the greater weight of the evidence 
that:
1. Lloyd's was required under the insurance policy to pay Lincoln Plaza's 
claim;
2. Lloyd's refusal to pay the claim in full was unreasonable under the 
circumstances, because of at least one of the following: (a) denying portions of 
the claim without a reasonable basis; (b) inadequately investigating the claim; 
(c) unreasonably delaying investigation and/or payment of the claim; (d) 
unreasonably withholding pertinent information from Lincoln Plaza; (e) taking 
advantage of Lincoln Plaza's vulnerable position after the storm; (f) 
conditioning payment of undisputed portions of the claim on settlement of 
disputed portions; (g) engaging Rimkus Engineering to inspect the damage to 
Lincoln Plaza; (h) ignoring the law in investigating and paying the claim; (i) 
failing to take reasonable steps to prevent further damage to the property while 
it investigated the claim; and (j) issuing a notice of cancellation.
3. Lloyd's did not deal fairly and in good faith with Lincoln Plaza; and
4. The violation of Lloyd's of its duty of good faith and fair dealing was 
the direct cause of the injury sustained by Lincoln Plaza.

[8] In 
addition, the trial court's error on this point of law caused it to erroneously 
grant a "directed verdict" on the issue, prohibiting Lloyds from arguing that 
Hotel had a duty to mitigate. This error further prejudiced Lloyds' 
defense.

[9] Jury 
Instruction No. 14 stated:
The State of Oklahoma has enacted statutes, which prohibit insurers from 
engaging in certain practices. The standard of conduct with which insurers are 
expected to comply (sic). Under Oklahoma law, the following acts constitute 
unfair claims settlement practices:
Knowingly misrepresenting to claimants pertinent facts or policy provisions 
relating to coverage at issue;
Failing to adopt and implement reasonable standards for prompt investigations 
of claims arising under its insurance policies or insurance contracts;
Not attempting in good faith to effectuate prompt, fair and equitable 
settlement of claims submitted in which liability has become reasonably 
clear;
Requesting a claimant to sign a release that extends beyond the subject 
matter that gave rise to the claim payment;
Issuing checks or drafts in partial settlement of a loss or claim under a 
specified coverage which contain language releasing an insurer or its insured 
from its total liability;
Compelling, without just cause, policyholders to institute suits to recover 
amounts due under its insurance policies or insurance contracts by offering 
substantially less than the amounts ultimately recovered in suits brought by 
them, when the policyholders have made claims for amounts reasonably similar to 
the amounts ultimately recovered;
If you find that Lloyds engaged in conduct constituting an unfair claim 
settlement practice as set forth above, you are entitled to consider such 
violation, together with all other facts and circumstances in evidence, when 
determining whether or not Lloyds breached its duty of good faith and fair 
dealing to Lincoln Plaza.

[10] 
OUJI 3d No. 22.1 provides:
An insurance company has a duty to deal fairly and act in good faith with its 
insureds.

[11] 
Jury Instruction No. 7 stated:
Oklahoma law provides that an insurer like Lloyd's has a duty to deal fairly 
and act in good faith with its insured. Further, the law presumes an insurer 
like Lloyd's knows the applicable law, and the reasonableness of its decisions 
must be judged in light of that law.
The special relationship between the insurer and its insured gives rise to 
the duty of good faith and fair dealing, especially in light of the unequal 
bargaining power of the parties. Of particular importance is the position of the 
insured after a loss is incurred, since the very risks insured against 
presuppose that if and when a claim is made, the insured will be disabled and, 
therefore, particularly vulnerable to an economically powerful entity.

[12] 12 O.S. 2011 §577.2 provides in 
relevant part:
Whenever Oklahoma Uniform Jury Instructions (OUJI) contains an instruction 
applicable in a civil case or a criminal case, giving due consideration to the 
facts and the prevailing law, and the court determines that the jury should be 
instructed on the subject, the OUJI instructions shall be used unless the court 
determines that it does not accurately state the law. Whenever OUJI does not 
contain an instruction on a subject on which the court determines that the jury 
should be instructed, the instruction given on that subject should be simple, 
brief, impartial and free from argument.

[13] In 
its renewed motion to compel, filed August 16, 2012, Hotel argues Lloyds waived 
the attorney-client privilege as to all communications with Mr. Dahnke on the 
subject of the actual cash value of the insured premises as it relates to the 
propriety of a co-insurance penalty. The counter-appeal does not identify where 
in the record this motion was determined by the trial 
court.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 99, 241 P.3d 285, BEERS v. HILLORY
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 155, 845 P.2d 187, 63 OBJ 3414, Dutsch v. Sea Ray Boats, Inc.
Discussed
 1993 OK 35, 849 P.2d 1085, 64 OBJ 971, Walker v. Chouteau Lime Co., Inc.
Discussed
 1994 OK 83, 878 P.2d 1026, 65 OBJ 2424, Juvenal By and Through Juvenal v. Okeene Public Schools
Discussed
 1952 OK 308, 248 P.2d 608, 207 Okla 171, GREAT NORTHERN LIFE INS. CO. v. COLE
Discussed at Length
 1917 OK 574, 172 P. 652, 70 Okla. 47, SPRINGFIELD FIRE & MARINE INS. CO. v. FIRST NAT. BANK OF TALOGA
Discussed
 2002 OK 76, 60 P.3d 497, IGLEHART v. BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY
Discussed
 2004 OK 9, 89 P.3d 1051, AMERICAN ECONOMY INSURANCE COMPANY v. BOGDAHN
Discussed
 2009 OK 48, 212 P.3d 1210, BOWMAN v. PRESLEY
Discussed
 2000 OK 18, 998 P.2d 1219, 71 OBJ 727, Skinner v. John Deere Ins. Co.
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
 1950 OK 137, 219 P.2d 224, 203 Okla. 86, VON STILLI v. YOUNG
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 577.2, Use of Instructions - Requests - Copies
Discussed at Length
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Discussed
Title 23. Damages
 Cite
Name
Level

 23 O.S. 21, Measurement of Damages
Cited
 23 O.S. 61, Breach of Obligation not Arising from Contract - Measure of Damages
Cited
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 1250.1, Short Title
Cited